United States Court of Appeals,

Eleventh Circuit.

No. 98-4230.

Ralph RICHARDSON, Plaintiff-Appellee,

v.

Janet RENO, Attorney General of the United States;  Doris Meissner, Commission, Immigration and Naturalization Service;  Robert Wallis, Acting District Director, Immigration and Naturalization Service;  United States Immigration and Naturalization Service;  United States Department of Justice;  and Executive Office of Immigration Review, Defendants-Appellants.

Dec. 9, 1998.

Appeal from the United States District Court for the Southern District of Florida.  (No. 97-3799-CIV-EBD), Edward B. Davis, Chief Judge.

Before CARNES and HULL, Circuit Judges, and HENDERSON, Senior Circuit Judge.

HULL, Circuit Judge:

**TABLE OF CONTENTS**

I. FACTS AND PROCEDURAL HISTORY        777

II. RICHARDSON'S HABEAS CORPUS PETITION        779

III. NEW IMMIGRATION LAWS    780

     A.     "Removal" Proceedings        781

     B.     Permanent Resident Criminal Aliens Returning From Abroad        782

     C.     Supreme Court's *Fleuti* Doctrine        783

     D.     Detention of Criminal Aliens "Seeking Admission"  784

     E.     Detention Under TPCRs in IIRIRA § 303(b)(3)        785

     F.     Detention Under INA § 236(c)        787

G. INA § 236(e) Restricts Review of Bond and Parole Decisions    788

H. Procedures for Removal Hearings    789

I. IIRIRA Consolidates Judicial Review in the Court of Appeals    790

J. INA § 242(a)(2)(C) Restricts Review of Removal Orders Against Criminal Aliens 791

K. INA § 242(a)(2)(B)(ii) Restricts Review of Discretionary Decisions    792

IV. DISCUSSION    792

A. INA § 242(g) Precludes § 2241 Habeas Jurisdiction Over Immigration Decisions    793

B. No Constitutional Infirmities to Avoid    796

C. Eleventh Circuit's *Boston-Bollers* Decision   798

D. Due Process Clause    800

E. Article III    802

F. Suspension Clause    803

G. Second Circuit's *Henderson* Decision    806

H. Ninth Circuit's *Magana-Pizano* Decision    807

I. Seventh Circuit's *Yang* Decision    808

J. INA §§ 242(b)(9) and (d) Require Final Removal Order    813

K. Alternative Review Under INA Satisfies Suspension Clause    815

V. CONCLUSION    820

This appeal arises from a district court's order granting a writ of habeas corpus to a thirty-year permanent resident alien petitioner with a cocaine-trafficking conviction who was detained as he attempted to enter the United States after a two-day trip to Haiti. The INS district

director denied bond pending the outcome of petitioner's removal proceedings. Petitioner filed his habeas corpus petition under 28 U.S.C. § 2241 asserting that the INS' illegal detention, denial of admission, and denial of a bond hearing violated his constitutional and statutory rights as a lawful permanent resident alien.

This case presents issues of first impression in this Circuit regarding subject matter jurisdiction under the Immigration and Nationality Act ("INA"), as amended by the Illegal Immigration Reform and Immigrant Responsibility Act of 1996 ("IIRIRA"). After review, we find the district court lacked jurisdiction over the habeas corpus petition. We reverse and order the district court to dismiss the petition.

## I. FACTS AND PROCEDURAL HISTORY

Appellee-petitioner Ralph Richardson ("Richardson") is a native and citizen of Haiti who has been a lawful permanent resident alien in the United States since 1968. In 1984, Richardson was convicted of carrying a concealed weapon. In 1990, Richardson was convicted of trafficking cocaine and served five years in prison.[1] The parties do not dispute that Richardson could have been deported under the immigration laws in existence in 1990 and could be deported under current immigration law but that deportation proceedings were never initiated.[2]

On October 24, 1997, Richardson left the United States and traveled to Haiti. On October 26, 1997, Richardson attempted to re-enter the United States at the Miami International Airport, but

---

[1] Richardson initially served only three years of his five-year sentence on the drug-trafficking offense. In 1993, he was arrested for violating his probation by eluding police and served the remainder of his sentence in prison. He was released from prison on January 11, 1994.

[2] 8 U.S.C. § 1251(a)(1)(1990); 8 U.S.C. § 1182(a)(10)(1990); 8 U.S.C. § 1227(a)(2)(b)(i) (Supp.1998).

3

was not allowed to enter. At the initial immigration checkpoint, Richardson presented an expired "I-151" card, also called an Alien Resident Card, and a valid Haitian passport. Richardson's use of an expired card caused him to be referred to a secondary immigration inspector for a more detailed interview regarding his eligibility to enter the United States.

Through this inspection, the INS concluded that Richardson, although a lawful permanent resident alien, was no longer eligible to enter the United States under the new immigration laws due to his prior criminal convictions. During the inspection, Richardson admitted his criminal history including his cocainetrafficking conviction, an aggravated felony under INA § 103(a)(43).[3] Richardson was taken to the Krome Detention Center, Miami, Florida, and immediately was placed in "removal" proceedings under INA § 240.[4]

On November 13, 1997, Richardson's attorney sent a letter to the INS district director in Miami requesting release from custody. On December 4, 1997, the district director denied Richardson's request.

On November 18, 1997, while awaiting the district director's response, Richardson also sought release on bond with the immigration judge at Krome. New INA § 101(a)(13)(C)(v)[5] provides that a lawful permanent resident alien, returning from abroad, is not deemed to be seeking

---

[3] 8 U.S.C. § 1101(a)(43) (Supp.1998). This opinion utilizes the section numbers of the INA and IIRIRA because the text of those statutes references INA and IIRIRA sections and because certain parts of IIRIRA are not codified. *See* footnote 42 *infra.* At the Miami International Airport, the immigration inspector prepared a four-page sworn statement signed by Richardson that outlined his criminal history.

[4] 8 U.S.C. § 1252 (Supp.1998). An INS "notice to appear," dated October 26, 1997 was served on Richardson alleging that he was an arriving alien who was a citizen of Haiti, not the United States, and was subject to removal due to his criminal convictions.

[5] 8 U.S.C. § 1101(a)(13)(C)(v) (Supp.1998).

an official "admission" to the United States, and can be admitted summarily, *unless* the alien has been convicted of certain crimes. Since Richardson's conviction for trafficking cocaine is a crime described in INA § 101(a)(13)(C)(v),[6] the immigration judge found that Richardson was "seeking admission" to the United States, that aliens "seeking admission" at the border can request release only from a district director, and that immigration judges lack jurisdiction over such requests.[7] On November 24, 1997, the immigration judge denied Richardson's release request for lack of jurisdiction.[8]

On November 26, 1997, Richardson filed in the district court a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241. Richardson filed an amended petition on December 10, 1997. Richardson's petition asserted, *inter alia,* that he was being illegally detained and, at a minimum, was entitled to a hearing before an immigration judge on his release request and not merely consideration by the district director. The INS moved to dismiss Richardson's petition for lack of subject matter jurisdiction.

On December 30, 1997, the magistrate judge issued a report finding statutory habeas jurisdiction under 28 U.S.C. § 2241 and recommending that Richardson be given "an individualized

---

[6]*Id.*

[7]*See* 8 C.F.R. § 103.1(g)(2)(ii)(B) (1997); 62 Fed.Reg. 10312, 10360 (1997) (codified in 8 C.F.R. § 236.1(c)(5) (Jan. 1, 1998)); *see* footnotes 38 and 40 *infra.*

[8]The proceedings before the immigration judge on Richardson's release request were not recorded or transcribed. On November 24, 1997, the immigration judge signed a form bond order with blanks to check for granting or denying release. The immigration judge checked the box stating that the request for release was denied and wrote "arriving alien" at the bottom of the form. Although nothing in the record clearly establishes that the basis of the immigration judge's decision was a lack of jurisdiction, both parties agree that the immigration judge did not conduct a bond hearing, although witnesses were present ready to testify, and that the immigration judge indicated lack of jurisdiction over Richardson's release request due to his status as an alien seeking admission.

hearing, within 14 days of any order adopting this recommendation at which time the immigration judge should considered [sic] whether petitioner is an arriving alien, and if not, whether and under what circumstances petitioner may be released from custody pending the completion of deportation proceedings."

On January 8, 1998, Richardson's removal proceedings concluded with the immigration judge's order that Richardson be removed to Haiti.[9] After a hearing during which Richardson testified and was represented by counsel, the immigration judge found that, because of his criminal convictions, Richardson was "inadmissible" under INA §§ 212(a)(2)(A)(i)(I), 212(a)(2)(A)(i)(II), and 212(a)(2)(C)[10] and not entitled to cancellation of removal under INA § 240A(a).[11] Richardson's appeal of the removal order to the Board of Immigration Appeals ("BIA") remains pending.[12]

On February 19, 1998 and over the INS' objections, the district court adopted the magistrate judge's report and recommendations, denied the INS' motion to dismiss and granted Richardson's petition. The district court ordered the immigration judge to hold "an individualized hearing within

---

[9]*In the Matter of Ralph Richardson, Respondent: In Removal Proceedings,* Case # A17-566-876 (Immigration Court, January 1, 1998).

[10]8 U.S.C. §§ 1182(a)(2)(A)(i)(I), 1182(a)(2)(A)(i)(II), & 1182(a)(2)(C) (Supp.1998).

[11]8 U.S.C. § 1229b (Supp.1998). Denying cancellation of removal under INA § 240A(a), the immigration judge found that Richardson was statutorily ineligible due to his cocaine-trafficking conviction, deemed an aggravated felony under INA § 101(a)(43). 8 U.S.C. § 1101(a)(43) (Supp.1998). INA § 240A (a), 8 U.S.C. § 1229b(a) (Supp.1998), provides that the "Attorney General may cancel removal in the case of an alien who is inadmissible or deportable from the United States if the alien—(a) has been an alien lawfully admitted for permanent resident for not less than five years, (2) has resided in the United States continuously for seven years after having been admitted in any status, *and* (3) *has not been convicted of any aggravated felony.*" (Emphasis supplied.)

[12]Richardson's brief was filed with the BIA on October 15, 1998, and the INS brief was due on November 28, 1998.

6

eleven (11) days from the date stamped on the Order, at which time the Immigration Judge should determine whether Petitioner is an arriving alien, and if not, whether and under what conditions Petitioner may be released from custody pending the completion of deportation proceedings."

This appeal ensued. On February 23, 1998, this Court granted the INS' motion to stay the district court's order pending this appeal. Richardson remains in custody.

## II. RICHARDSON'S HABEAS CORPUS PETITION

Before examining the new immigration laws, we outline Richardson's claims. In this case, Richardson does not dispute that he is an alien, that he has a cocaine-trafficking conviction, and that cocaine trafficking is a basis for both inadmissibility and deportability under the INA.[13] Instead, Richardson's habeas corpus petition asserts, *inter alia,* that his constitutional and statutory rights were violated because:

(1) the INS ignored his thirty-year legal permanent resident alien status, misinterpreted INA § 101(a)(13)(C)[14] in classifying Richardson as an arriving alien "seeking admission," unlawfully detained him, and illegally denied him admission, as opposed to permitting entry into the United States and then initiating removal proceedings based on "deportability;"

---

[13]In the removal hearing before the immigration judge, Richardson contended that the INS' evidence of his criminal conviction for cocaine trafficking was improperly certified, but the judge admitted this evidence of his conviction. The INS also introduced Richardson's sworn statement at inspection that he had a cocaine-trafficking conviction. At the removal hearing, Richardson testified that while he signed the statement, he did not read it because he was "confused," "shocked," and "upset." The immigration judge found that the INS had proved a cocaine-trafficking conviction. This is one of many issues Richardson has raised on appeal to the BIA; however, this issue was not raised in the district court.

[14]8 U.S.C. § 1101(a)(13)(C) (Supp.1998).

(2) the Attorney General's detaining and denying a legal permanent resident alien admission back into the United States and delegating her custody release authority to only the INS district director, without a bond hearing before an immigration judge, are *ultra vires* of the INA and illegal;

(3) the Attorney General's detaining and denying a legal permanent resident alien admission and a bond hearing before the immigration judge solely because of his brief trip abroad violates that resident alien's due process guarantees under the Due Process Clause of the Fifth Amendment; and

(4) the Attorney General's allowing a bond hearing before an immigration judge for legal permanent resident aliens arrested in the United States, but denying a bond hearing to Richardson only because of his two-day sojourn abroad violates the equal-protection guarantees of the Due Process Clause of the Fifth Amendment.

In explaining why he filed his habeas petition while his BIA appeal remained pending, Richardson contends that exhaustion of administrative remedies is futile because the INA, as amended by IIRIRA, eliminates judicial review in the courts of appeals over any prospective BIA final order removing him as a criminal alien, and forecloses appeal of the INS' district director's bond decisions to an immigration judge. Finally, Richardson asserts that INA § 242(g)'s exclusive-jurisdiction provision[15] does not repeal habeas jurisdiction under 28 U.S.C. § 2241 and does not prevent the district court from hearing a permanent resident alien's habeas petition alleging unlawful executive detention in violation of the INA and the Constitution.

Since Richardson attempted to enter the United States on October 26, 1997, IIRIRA's extensive revisions to the INA undisputedly govern this case.[16]

---

[15] 8 U.S.C. § 1252(g) (Supp.1998).

[16] IIRIRA was signed into law on September 30, 1996 and became effective on April 1, 1997.

8

III. NEW IMMIGRATION LAWS

In 1996, Congress twice revised the INA. The changes began incrementally with the enactment of the Antiterrorism and Effective Death Penalty Act ("AEDPA") in April 1996 and accelerated with IIRIRA's major structural revisions to the INA in September 1996.[17] Congress' reconstruction of the INA includes, *inter alia,* these key elements applicable to Richardson's appeal:

(1) new custody rules mandating detention of aliens after a serious criminal conviction;

(2) new procedures for prompt removal of criminal aliens from the United States;

(3) new restrictions on judicial review that preclude all judicial involvement in the administrative agency removal and detention process until after a final removal order is entered by the BIA;

(4) new provisions directing that judicial review shall be *exclusively* under the INA and in only the court of appeals after a final BIA removal order;  and

(5) new provisions removing all other formerly available federal-court jurisdiction over the detention and removal of criminal aliens, including repeal of statutory habeas under 28 U.S.C. § 2241.

Simply put, IIRIRA strips all jurisdiction, including § 2241 habeas, from the district courts, places exclusive judicial review in the court of appeals, and delays even that judicial review until after a final administrative agency order.  Congress has reduced judicial review to one time in one place in an effort to expedite the removal of resident aliens with serious criminal convictions.  Since

---

[17]Antiterrorism and Effective Death Penalty Act ("AEDPA"), Pub.L. No. 104-132, 110 Stat. 1214 (1996), and the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA"), Pub.L. No. 104-208, 110 Stat. 3009 (1996).

these legislative revisions to the INA are extensive, complicated, and affect so many resident aliens with criminal convictions in such a significant manner, we outline them in detail.

A. "Removal" Proceedings

Upon being denied entry, Richardson was detained and immediately placed in "removal" proceedings.[18]  As one of its broad structural changes to the INA, IIRIRA eliminated some of the distinctions between "deportation" and "exclusion" proceedings and created a unified set of proceedings in INA § 240[19] called "removal proceedings."[20]  New INA § 240(e)(2) defines the term "removable" as an alien who is "deportable" or an alien who is "inadmissible" (replacing the old term "excludable").[21]  New INA § 240(a)(3) provides that unless specified otherwise under the INA, a removal proceeding "shall be the sole and exclusive procedure for determining whether an alien may be admitted to the United States or, if the alien has been so admitted, removed from the United States."[22]

Under the unified framework in INA § 240, many of the procedures in "removal proceedings" are now the same regardless of whether the alien is seeking admission to the United

---

[18]Before IIRIRA, the INA separated the concepts of exclusion proceedings and deportation proceedings.  Different procedural rules applied to proceedings to exclude an alien from entering the United States.  *Compare* 8 U.S.C. § 1226 (1996) *with* 8 U.S.C. § 1252b (1996).

[19]8 U.S.C. § 1229a (Supp.1998).

[20]8 U.S.C. § 1229a(a)(1) (Supp.1998).  Removal proceedings were created in INA § 240. Other sections of the INA established the procedures to be employed in removal proceedings. For example, INA § 239, 8 U.S.C. § 1229 (Supp.1998), established the procedures for the initiation of removal proceedings.  INA § 240A, 8 U.S.C. § 1229b (Supp.1998), established the procedures for the cancellation of removal proceedings.

[21]8 U.S.C. § 1229a(e)(2) (Supp.1998).

[22]8 U.S.C. § 1229a(a)(3) (Supp.1998).

States or the alien is being deported from the United States.[23] In contrast, the substantive grounds for determining "inadmissibility" and "deportability" are still handled in several separate parts of the INA and vary considerably.[24] However, Richardson's cocaine-trafficking conviction is a sufficient basis alone for both deportation and inadmissibility under the INA.[25]

B. Permanent Resident Criminal Aliens Returning From Abroad

IIRIRA also altered the rules for permanent resident aliens returning from abroad, which is why the INS detained Richardson and immediately initiated "removal proceedings" against him. Under IIRIRA's restructuring, most permanent resident aliens returning from abroad are summarily admitted back into this country.

In this regard, new INA § 101(a)(13)(c) provides that "an alien lawfully admitted for permanent residence in the United States shall not be regarded as *seeking an admission* into the United States for purposes of the immigration laws *unless* the alien":

(i) has abandoned or relinquished that status

---

[23]Within INA § 240's framework, certain procedures are still differentiated based on whether deportability or inadmissibility is the subject of the removal proceeding. 8 U.S.C. § 1229a (Supp.1998). For example, INA § 240(c)(2)(A) provides that an alien has the burden of establishing eligibility for admission "clearly and beyond doubt" or "by clear and convincing evidence that the alien is lawfully present in the United States pursuant to a prior admission;" whereas, INA § 240(c)(3)(A) provides that the INS has the burden of establishing by clear and convincing evidence "that the alien is deportable." 8 U.S.C. §§ 1229a(c)(2)(A) (Supp.1998) & 1229a(c)(3)(A) (Supp.1998). As discussed *infra* in footnotes 38 and 40, the INS district director decides bond requests for arriving aliens detained while seeking admission into the United States; whereas, aliens being deported may request bond from an immigration judge.

[24]*Compare* admission qualifications for aliens covered by 8 U.S.C. §§ 1181-1189 (Supp.1998), with the basis for deporting aliens in 8 U.S.C. § 1227 (Supp.1998).

[25]*See* 8 U.S.C. § 1182(a)(2) (Supp.1998) (listing criminal inadmissibility grounds); *Id.* § 1227(a)(2) (listing criminal deportability grounds). A permanent resident alien is "deportable" for many more crimes than a permanent resident alien is deemed "seeking admission" and "inadmissible." *Id.*

11

(ii) has been absent from the United States for a continuous period in excess of 180 days

(iii) has engaged in illegal activity after having departed the United States

(iv) has departed from the United States while under legal process seeking removal of the alien from the United States, including removal proceedings under this Act and extradition proceedings,

(v) *has committed an offense identified in section 212(a)(2) of this Act* [which includes controlled substances], unless since such offense the alien has been granted relief under section 212(h) or 240A(a), *or*

(vi) is attempting to enter at a time or place other than as designated by immigration officers or has not been admitted to the United States after inspection and authorization by an immigration officer.

INA § 101(a)(13)(C) (emphasis supplied).[26]   Section 101(a)(13)(C)(v) references offenses in "section 212(a)(2)," which provides that any alien convicted of a controlled substance offense is inadmissible.[27]   Because Richardson was a lawful permanent resident with a cocaine-trafficking conviction covered by Section 1182(a)(2), the INS treated him as an arriving alien "seeking

---

[26]8 U.S.C. § 1101(a)(13) (Supp.1998).  INA §§ 212(a)(2) and (h) are codified in 8 U.S.C. § 1182(a)(2) and (h) (Supp.1998).  INA § 240A(a) is codified in 8 U.S.C. § 1229b(a) (Supp.1998).

[27]INA § 212(a)(2)(A)(i)(I) and (II), 8 U.S.C. § 1182(2)(A)(i)(I) and (II) (Supp.1998), includes controlled substance offenses as follows:

> ... any alien convicted of ... a crime involving moral turpitude ... or ... a violation of (or a conspiracy or attempt to violate) any law or regulation of a State, the United States, or a foreign country relating to a controlled substance ... is inadmissible.

*Id.* Pre-IIRIRA, certain criminal aliens could seek discretionary relief under INA § 212(h), 8 U.S.C. § 1182(h) (1995), or suspension of deportation under INA § 244, 8 U.S.C. § 1254 (1995).  Post-IIRIRA an alien, including a permanent resident alien, convicted of an aggravated felony as defined under INA § 101(a)(43), 8 U.S.C. § 1101(a)(43) (Supp.1998), is statutorily ineligible for a waiver under INA § 212(h), 8 U.S.C. § 1182(h) (Supp.1998), and also statutorily ineligible for cancellation of removal under INA § 240A(a), 8 U.S.C. § 1229b(a) (Supp.1998).  *See* footnote 11 *supra.*

admission" to the United States under INA § 101(a)(13)(C) and subjected him to inspection as any other alien arriving to the United States.[28]

## C. Supreme Court's *Fleuti* Doctrine

Immediately upon his detention, the INS initiated removal proceedings against Richardson. In turn, Richardson filed his § 2241 habeas petition in the district court. Richardson contended, *inter alia,* that the INS had interpreted erroneously new INA § 101(a)(13)(C), illegally considered him an arriving alien "seeking admission," and therefore unlawfully detained him and denied him admission and bond.

Before 1996, INA § 101(a)(13) provided that a returning permanent resident alien shall not be regarded as making "an entry" into the United States if the alien's presence abroad was not "intended or reasonably ... expected."[29] In *Rosenberg v. Fleuti,* 374 U.S. 449, 83 S.Ct. 1804, 10

---

[28]Since under INA § 101(a)(13)(C), 8 U.S.C. § 1101(a)(13)(C) (Supp.1998), Richardson was "seeking admission" at a port of entry, the INS treated Richardson an "arriving alien" under INS regulation 62 Fed.Reg. 10312, 10330 (1997) (currently codified in 8 C.F.R. § 1.1(q) (1998)), which states: "The term arriving alien means an alien who seeks admission to or transit through the United States ..."

[29]INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (1994), provided:

> (13) The term "entry" means any coming of an alien into the United States, from a foreign port or place or from an outlying possession, whether voluntarily or otherwise, except that an alien having a lawful permanent residence in the United States shall not be regarded as making an entry into the United States for the purposes of the immigration laws if the alien proves to the satisfaction of the Attorney General that his departure to a foreign port or place or to an outlying possession was not intended or reasonably to be expected by him or his presence in a foreign port or place or in an outlying possession was not voluntary: Provided, That no person whose departure from the United States was occasioned by deportation proceedings, extradition, or other legal process shall be held to be entitled to such exception.

*Id.*

13

L.Ed.2d 1000 (1963), the Supreme Court interpreted "intended" in former INA § 101(a)(13) as an intent to depart the country in a manner "meaningfully interruptive of the alien's permanent residence." The Court held that a lawful permanent resident's "innocent, casual and brief" excursion was not sufficiently interruptive of the alien resident's status to be "intended" and would not be deemed an "entry." *Id.*

Unfortunately for Richardson, IIRIRA replaces former INA § 101(a)(13) with an entirely new statutory scheme.[30] New INA § 101(a)(13)(A) replaces the term "entry" with the terms "admission" and "admitted," which are defined as "the lawful entry of the alien into the United States after inspection and authorization by an immigration officer."[31] The statute no longer references an alien's intent. Instead, new INA § 101(a)(13)(C) provides that a lawful permanent resident "shall not be regarded as seeking admission," and thus shall be summarily admitted back into the United States, unless the alien falls under one of the six subparagraphs (i) through (vi) of INA § 101(a)(13)(C) quoted above. Since Richardson's cocaine-trafficking conviction is covered expressly by INA § 101(a)(13)(C)(v), the INS treated Richardson as an arriving alien "seeking admission."[32]

In the district court, the INS stressed that, in another case, the BIA had held that *Fleuti* 's "innocent, casual, and brief" rule no longer applies because IIRIRA repealed the statutory language relied upon in *Fleuti.*[33] The INS emphasized that INA § 101(a)(13)(C) no longer defines

---

[30]IIRIRA § 301(a) enacted the new version of INA § 101(a)(13), 8 U.S.C. § 1101(a)(13) (Supp.1998).

[31]8 U.S.C. § 1101(a)(13)(A) (Supp.1998).

[32]*See* footnote 28 *supra.*

[33]*See Matter of Collado-Munoz,* Int. Dec. No. 3333 (BIA Dec. 18, 1997).

14

"admission" with reference to an alien's intent, thus removes the entire *Fleuti* concept, and requires the INS to treat Richardson as "seeking admission."[34] Rejecting the INS' position, the district court determined that the INS was not required to treat Richardson as "seeking admission." The district court interpreted new INA § 101(a)(13)(C) as specifying only when a returning alien *may not* be regarded as "seeking admission," as opposed to *shall be* regarded as "seeking admission." The INS submits that the language of INA § 101(a)(13)(C) is explicit and nondiscretionary and that the district court circumvented its plain language.[35]

The proper construction of INA § 101(a)(13)(C) and the *Fleuti* issue are some of the issues Richardson has raised before the BIA in his pending appeal of the immigration judge's removal order.

D. Detention of Criminal Aliens "Seeking Admission"

While his BIA appeal proceeds, Richardson's habeas claims also stem, in part, from IIRIRA's new stringent custody rules for aliens with serious criminal convictions. INA § 235(b)(2)(A) provides that any alien "seeking admission" to the United States who "is not clearly and beyond a doubt entitled to be admitted" "shall be detained" for removal proceedings, as follows:

---

[34]*Fleuti* addressed the harsh result of a legal permanent resident alien suddenly being excludable from the United States just because he left the country a few days, while not being deportable for the same conduct. The INS stresses the concern in *Fleuti* is not applicable here as Richardson is both inadmissible and deportable for his crimes. 8 U.S.C. § 1182(a)(2) (Supp.1998); 8 U.S.C. § 1227(a)(2)(B) (Supp.1998). New INA § 101(a)(13)(C) is also arguably more favorable for most legal permanent residents as they are able to re-enter the United States automatically for up to 180 days (as opposed to just after a brief trip abroad under *Fleuti* ), unless they fall into one of the six categories in INA § 101(a)(13)(C)(i-vi).

[35]The INS also asserts that the Attorney General is entitled to deference if her interpretation of an immigration statute is reasonable, citing *Chevron USA v. Natural Resources Defense Council,* 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). *Perlera-Escobar v. Executive Office for Immigration,* 894 F.2d 1292, 1296 (11th Cir.1990) (quoting *Chevron* ).

... in the case of an alien who is an applicant for admission, if the examining immigration officer determines that *an alien seeking admission* is not clearly and beyond a doubt entitled to be admitted, the alien *shall be detained* for a proceeding under section 240 [removal proceedings].

INA § 235(b)(2)(A) (emphasis supplied).[36]

An alien so detained may seek parole into the United States temporarily. INA § 212(d)(5)(A) provides that the Attorney General "may in his discretion ... parole into the United States temporarily under such conditions as he may prescribe only on a case-by-case basis for urgent humanitarian reasons or significant public benefit or for reasons deemed strictly in the public interest any alien applying for admission to the United States."[37] At the time of Richardson's attempted entry, the Attorney General's regulations delegated to the INS district director the authority to review "parole" requests.[38] On December 4, 1997, the district director sent Richardson's counsel a letter

---

[36] 8 U.S.C. § 1225(b)(2)(A) (Supp.1998). INA § 240 is codified in 8 U.S.C. § 1229a (Supp.1998).

[37] 8 U.S.C. § 1182(d)(5)(A) (Supp.1998).

[38] 8 C.F.R. § 103.1(g)(2)(ii)(B) (1997) stated:

> (B) District directors are delegated the authority to grant or deny any application or petition submitted to the Service, except for matters delegated to asylum officers pursuant to part 208 and § 253.1(f) of this chapter, or exclusively delegated to service center directors, to initiate any authorized proceeding in their respective districts, and to exercise the authorities under § § 242.1(a), 242.2(a) and 242.7 of this chapter without regard to geographical limitations. District directors are delegated authority to conduct the proceeding provided for in § 252.2 of this chapter.

*Id.*

16

outlining Richardson's criminal convictions and denying parole on the basis of no showing of a significant public benefit or urgent humanitarian reasons.[39]

After initial custody and release determinations by the INS district director, aliens may seek release from the immigration judge. However, at the time of Richardson's attempted entry, the Attorney General's regulations provided that immigration judges lacked jurisdiction over release requests by "arriving aliens" facing removal proceedings.[40]

---

[39]Noting that Richardson's criminal convictions included an aggravated felony as defined by INA § 101(a)(43), the district director's letter, dated December 4, 1997, stated: "The release of Mr. Richardson into the community will be of no significant public benefit. Mr. Richardson has not shown that his release would be warranted based upon urgent humanitarian reasons."

[40]62 Fed.Reg. 10312 (1997) (currently codified in 8 C.F.R. § 236.1(d)(1) (Nov. 3, 1998)) stated:

> Application to immigration judge. After an initial custody determination by the district director, including the setting of a bond, the respondent may, at any time before an order under 8 CFR part 240 becomes final, request amelioration of the conditions under which he or she may be released. Prior to such final order, and except as otherwise provided in this chapter, the immigration judge is authorized to exercise the authority in section 236 of the Act (or section 242(a)(1) of the Act as designated prior to April 1, 1997 in the case of an alien in deportation proceedings) to detain the alien in custody, release the alien, and determine the amount of bond, if any, under which the respondent may be released, as provided in § 3.19 of this chapter. If the alien has been released from custody, an application for amelioration of the terms of release must be filed within 7 days of release. Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director.

*Id.* However, 62 Fed.Reg. 10312, 10360 (1997) (codified in 8 C.F.R. § 236.1(c)(5)(i) (Jan. 1, 1998)) stated:

> An immigration judge may not exercise the authority provided in this section, and the review process described in paragraph (d) of this section shall not apply, with respect to ... [a]rriving aliens as described in § 1.1(q) of this chapter....

*Id.* This provision was subsequently modified in 8 C.F.R. § 236.1(c)(11) (Nov. 3, 1998).

17

E. Detention Under TPCRs in IIRIRA § 303(b)(3)

IIRIRA enacted new mandatory custody rules for certain criminal aliens in both INA § 236(c) and the Transition Period Custody Rules ("TPCRs") in IIRIRA § 303(b)(3). When Richardson attempted to enter the United States, the TPCRs mandated the detention of certain criminal aliens, as follows:

> (A) In General—During the period in which this paragraph is in effect pursuant to paragraph (2), *the Attorney General shall take into custody any alien who—*
>
> > (i) has been convicted of an aggravated felony (as defined under section 101(a)(43)) of the Immigration and Nationality Act, as amended by section 321 of [IIRIRA]
> >
> > (ii) is inadmissible by reason of having committed any offense covered in section 212(a)(2) of such Act
> >
> > (iii) is deportable by reason of having committed any offense covered in section 241 (a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of such Act (before redesignation under this subtitle), or
> >
> > (iv) is inadmissible under section 212(a)(3)(B) of such act or deportable under section 241(a)(4)(B) of such act (before redesignation under this subtitle)
>
> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

IIRIRA § 303(b)(3)(A).[41]   The TPCRs mandated Richardson's detention because his cocaine-trafficking conviction is an aggravated felony under the INA[42] and thus falls under subparagraph (i) of the TPCR in IIRIRA § 303(b)(3)(A).   Richardson's cocaine-trafficking conviction is also an offense covered by INA §§ 212(a)(2), 241(a)(2), 212(a)(3)(B), and 241(a)(4)(B),[43] and thus is also covered by the other three subparagraphs (ii), (iii), and (iv) of the TPCR in IIRIRA § 303(b)(3)(A).

The TPCRs also significantly restricted the Attorney General's release authority for the criminal aliens subject to the TPCRs' mandatory detention.  The TPCR in IIRIRA § 303(b)(3)(B) provides that the Attorney General "may release" an alien *but only* if the alien is an alien described in subparagraphs (A)(ii) or (A)(iii) of the TPCR in IIRIRA § 303(b)(3), is lawfully admitted, will not pose a danger and is likely to appear for any scheduled proceeding.[44]

---

[41]The TPCRs are not codified.  The text of the TPCRs can be found in the historical notes following 8 U.S.C. § 1226 (Supp.1998).  Richardson argues that the interim TPCRs apply to aliens detained while attempting to gain admission to the United States.  Whether these rules apply only to aliens within the United States or to any alien detained by the INS is not material to the resolution of this appeal.  The Court assumes without deciding that the detention and release provisions of the TPCRs apply to aliens seeking admission and aliens already in the United States.  INA § 101(a)(43) is codified in 8 U.S.C. § 1101(a)(43) (Supp.1998).  INA § 212 is codified in 8 U.S.C. § 1182 (Supp.1998).  INA § 241 is codified in 8 U.S.C. § 1227 (Supp.1998).

[42]Successive definitions of the term "aggravated felony" have been enacted in INA § 101(a)(43), 8 U.S.C. § 1101(a)(43).  As initially enacted in 1988, the term covered only a few serious offenses, such as murder, drug trafficking, and illicit trafficking in firearms.  The definition has expanded continually to include less serious offenses.  The adverse immigration consequences legislated by Congress for permanent resident aliens with an aggravated felony conviction, as defined under the INA, have likewise continued to expand.

[43]8 U.S.C. §§ 1182(a)(2), 1227(a)(2), 1182(a)(3)(B), & 1227(a)(4)(B) (Supp.1998).

[44]The TPCR in IIRIRA § 303(b)(3)(B) states:

> (B) Release.—The Attorney General may release the alien only if the alien

19

Under the TPCRs, the Attorney General could not have released an alien detained because of an aggravated felony conviction because that alien is in a category mandatorily detained under the TPCR in IIRIRA § 303(b)(3)*(A)(i)* and is not in an (A)(ii) or (A)(iii) category subject to release under the TPCR in IIRIRA § 303(b)(3)(B).[45]

When Richardson attempted to enter the country, the Attorney General had implemented regulations delegating her detention and release authority under the TPCRs and INA § 236(c). Under those regulations, the INS district director made an initial determination regarding custody and release of criminal aliens under both the TPCRs and INA § 236(c).[46] After the district director's initial determination, an alien could seek release from an immigration judge.[47] However,

---

> is an alien described in subparagraph (A)(ii) or (A)(iii) and—
>
> > (i) the alien was lawfully admitted to the United States and satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding, ...
>
> Subsections (A)(ii) and (A)(iii) describe aliens inadmissible because of an offense described in INA § 212(a)(2) or deportable because of an offense described in INA §§ 241(a)(2)(A)(ii), (A)(iii), (B), (C), or (D). The TPCR in IIRIRA §§ 303(b)(A)(ii) & 303(b)(A)(iii).

[45]Commentators note that since criminal aliens, even if legal permanent resident aliens, are now clearly removable for certain crimes, the mandatory custody rules for criminal aliens were intended to insure removal because criminal aliens no longer have incentive to show up voluntarily for removal proceedings. *See, e.g.,* Peter H. Schuck, *INS Detention and Removal: A "White Paper",* 11 Geo. Immigr. L.J. 667, 671 (1997). Similarly, the INS acknowledged at oral argument that it is discovering permanent residents convicted of serious crimes when they seek re-entry in part because of the difficulty of finding them through the myriad state courts.

[46]*See* footnote 40 *supra.*

[47]*Id.*

immigration judges lacked jurisdiction over release requests of "arriving aliens" facing removal proceedings.[48]

In addition to denying parole, the INS district director's letter, dated December 4, 1997, concluded that Richardson "would have no incentive to appear for Immigration hearings" and thus in effect denied bond as well. Although Richardson was subject to mandatory detention and not eligible for release on bond, it appears that the district director considered release on bond.

F. Detention Under INA § 236(c)

Although enacted by IIRIRA in 1996, new INA § 236(c) *was not in effect* when Richardson attempted to enter the United States on October 24, 1997.[49] IIRIRA § 303(b)(2) allowed the Attorney General to delay the implementation of INA § 236(c) for up to two years by providing notice to Congress that the INS lacked sufficient space and personnel to accommodate the mandate of INA § 236(c). The Attorney General twice provided such notice and delayed the effective date of INA § 236(c) until October 10, 1998. During the two-year interim, the TPCR in IIRIRA § 303(b)(3) supplanted INA § 236(c).[50] As of October 10, 1998, INA § 236(c)(1) also mandates Richardson's detention, whether he is considered inadmissible or deportable, for his criminal convictions, as explained below.

New INA § 236 contains some general custody rules for aliens in removal proceedings and some specific, more stringent, custody rules for certain criminal aliens. Under INA § 236(a) "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision

---

[48]*Id.*

[49]INA § 236(c), 8 U.S.C. § 1226(c) (Supp.1998).

[50]*Id.*

on whether the alien is to be removed from the United States."[51]  Under INA § 236(a) and (b), the

Attorney General *may* grant bond or parole and *may* revoke bond or parole for an alien so arrested.[52]

However, INA § 236(c) provides for mandatory detention of certain criminal aliens, whether

inadmissible or deportable.  Subparagraph (1) of new INA § 236(c), entitled "Detention of criminal

aliens," mandates that the Attorney General *shall take* into custody a criminal alien who falls into

one of these four categories:

> (A) is inadmissible by reason of having committed any offense covered in section 212(a)(2),[53]

> (B) is deportable by reason of having committed any offense covered in section 237(a)(2)(A)(ii), (A)(iii), (B), (C), or (D),[54]

> (C) is deportable under section 237(a)(2)(A)(i)[55] on the basis of an offense for which the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

---

[51]8 U.S.C. § 1226(a) (Supp.1998) (emphasis supplied).

[52]8 U.S.C. § 1226(a) and (b) (Supp.1998).

[53]INA § 212(a)(2), 8 U.S.C. § 1182(a)(2) (Supp.1998), covers certain crimes involving "moral turpitude (other than a purely political offense) or an attempt or conspiracy to commit such a crime," or "a violation of (or a conspiracy or attempt to violate)" any state, federal, or foreign law "relating to a controlled substance."

[54]These sections cover certain multiple criminal convictions in INA § 237(a)(2)(A)(ii), an aggravated felony in § 1227(a)(2)(A)(iii), certain controlled substance offenses in INA § 237(a)(2)(B), certain firearm offenses in INA § 237(a)(2)(C), and other miscellaneous crimes in INA § 237(a)(2)(D).  INA §§ 237(a)(2)(A)(ii), (A)(iii), (B), (C) & (D), 8 U.S.C. §§ 1227(a)(2)(A)(ii), (A)(iii), (B), (C) & (D) (Supp.1998).

[55]INA § 237(a)(2)(A)(i), 8 U.S.C. § 1227(a)(2)(A)(i) (Supp.1998), covers crimes involving moral turpitude committed within a certain time frame after the date of admission and for which a sentence of one year or longer may be imposed.

> (D) is inadmissible under section 212(a)(3)(B) or deportable under section 237(a)(4)(B),[56]

> when the alien is released, without regard to whether the alien is released on parole, supervised release, or probation, and without regard to whether the alien may be arrested or imprisoned again for the same offense.

INA § 236(c)(1).[57] Next, subparagraph (2) of new INA § 236(c) provides that the Attorney General "may release" an alien in one of these four mandatory detention classes "only if the Attorney General decides" that the alien's release is necessary to the protection of someone cooperating in the investigation of major criminal activity, *and* the alien satisfies the Attorney General that the alien will not pose a danger to the safety of others and is likely to appear at any scheduled hearing.[58] Richardson's cocaine-trafficking offense brings him within several mandatory detention categories in INA § 236(c)(1), but he does not fall within the discretionary release option in INA § 236(c)(2).

G. INA § 236(e) Restricts Review of Bond and Parole Decisions

---

[56]INA § 212(a)(3)(B), 8 U.S.C. § 1182(a)(3)(B) (Supp.1998), and INA § 237(a)(4)(B), 8 U.S.C. § 1227(a)(4)(B) (Supp.1998), cover certain "terrorist activities."

[57]8 U.S.C. § 1226(c)(1) (Supp.1998).

[58]INA § 236(c)(2), entitled "Release," provides:

> The Attorney General may release an alien described in paragraph (1) only if the Attorney General decides pursuant to section 3521 of Title 18, that release of the alien from custody is necessary to provide protection to a witness, a potential witness, a person cooperating with an investigation into major criminal activity, or an immediate family member or close associate of a witness, potential witness, or person cooperating with such an investigation, and the alien satisfies the Attorney General that the alien will not pose a danger to the safety of other persons or of property and is likely to appear for any scheduled proceeding. A decision relating to such release shall take place in accordance with a procedure that considers the severity of the offense committed by the alien.

INA § 236(c)(2), 8 U.S.C. § 1226(c)(2) (Supp.1998).

Of particular relevance to Richardson's situation is INA § 236(e) which applies to detention and release decisions under both INA § 236(c)[59] and the TPCR in IIRIRA § 303. INA § 236(e) significantly restricts the judicial review of the Attorney General's decisions as follows:

(e) Judicial review

        The Attorney General's discretionary judgment regarding the application of this section [236's custody rules] shall not be subject to review. No court may set aside any action or decision by the Attorney General under this section regarding the detention or release of any alien or the grant, revocation, or denial of bond or parole.

INA § 236(e).[60] Thus, the INS contends that the district court had no jurisdiction to review the INS district director's discretionary decision to grant or deny Richardson bond or parole.

Richardson responds that INA § 236(e) applies to only final, not interim, orders, and that historically bond decisions were considered collateral to the removal proceedings and cognizable under § 2241 habeas in immigration cases. However, INA § 236(e), by its plain language, bars judicial review of the INS' discretionary bond and parole decisions. Nonetheless, we note that

---

[59] 8 U.S.C. § 1226(c) (Supp.1998).

[60] 8 U.S.C. § 1226(e) (Supp.1998). Richardson contends that INA § 236(e) does not apply to this case because he was detained while the TPCRs were in place. Although Richardson correctly argues that the TPCRs (and not INA § 236(c)) applied to his detention from October 26, 1997 to October 9, 1998, the TPCRs appear to supplant only INA § 236(c) and not INA § 236(e) for the reasons below.

        IIRIRA § 303(b)(2), the effective date provision for IIRIRA § 303(a), allows the Attorney General to delay for up to two years the effective date of INA § 236(c). During the period when INA § 236(c) is not in effect, the TPCRs apply instead of INA § 236(c). However, IIRIRA § 303(b)(2) does not provide that the Attorney General can delay the effective date of new INA § 236(e). Instead, INA § 236(e) is governed by the effective-date provision in IIRIRA § 303(b)(1) which provides the general rule that INA § 236 is effective the same day as the rest of Title III of IIRIRA. In any event, we need not resolve this issue because the two-year delay has expired and INA § 236(e) is now clearly effective.

24

Richardson is not actually seeking review of those INS discretionary decisions but instead review of his constitutional claim that denial of bond without a hearing before an immigration judge violates his constitutional rights.

H. Procedures for Removal Hearings

While only the INS district director decided Richardson's request for parole and bond, IIRIRA did not diminish Richardson's right to a full hearing before the immigration judge on the merits of his removal from the United States.[61] Before issuing any removal order, an immigration judge still must hold a hearing[62] in which the alien may be represented by counsel.[63] The alien is entitled to present evidence and cross-examine witnesses presented by the United States.[64] A complete record is required to be kept of all testimony and evidence produced at the hearing.[65] A "criminal alien" subject to removal (either as inadmissible or deportable) has a right to appeal a removal order to the BIA,[66] and the immigration judge "shall inform the alien of the right to appeal."[67]

---

[61]*Compare* 8 U.S.C. § 1252 (1995) *with* 8 U.S.C. § 1229a(a)(1) (Supp.1998).

[62]The hearing can take several forms—a hearing with the alien present, a hearing without the alien's presence if the alien so consents, through a video conference, or over the telephone if the alien so consents. INA § 240(b)(2), 8 U.S.C. § 1229a(b)(2) (Supp.1998).

[63]Although an alien subject to removal may secure his or her own counsel, according to INA § 240(b)(4)(A) the government is not required to provide counsel to the alien. 8 U.S.C. § 1229a(b)(4)(A) (Supp.1998).

[64]INA § 240(b)(4)(B), 8 U.S.C. § 1229a(b)(4)(B) (Supp.1998).

[65]INA § 240(b)(4)(C), 8 U.S.C. § 1229a(b)(4)(C) (Supp.1998).

[66]8 C.F.R. § 3.1(b)(3) (1998).

[67]INA § 240(c)(4), 8 U.S.C. § 1229a(c)(4) (Supp.1998).

Represented by counsel, Richardson received a hearing before an immigration judge on the merits of his removal from the United States and has appealed the judge's removal order to the BIA. As of this date, the BIA has not issued its decision.

I. IIRIRA Consolidates Judicial Review in the Court of Appeals

IIRIRA also completed the major overhaul of federal-court jurisdiction over immigration matters begun by the AEDPA. Prior to 1996, INA § 106 set out the judicial-review scheme for deportation and exclusion orders.[68] INA § 106(a)(2) provided for petition for review in the court of appeals.[69] In addition, INA § 106(a)(10) allowed aliens in custody to seek habeas corpus review of final deportation orders under the INA.[70] Aliens also could rely on 28 U.S.C. § 2241 habeas corpus to challenge INS detention or deportation proceedings.[71]

On April 24, 1996, Congress enacted the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA").[72] AEDPA § 440[73] repealed INA § 106(a)(10), which had allowed habeas corpus review under the INA. In its place, AEDPA § 440(a) enacted a new INA § 106(a)(10), which states

---

[68]*See generally* 8 U.S.C. § 1105a (1995).

[69]8 U.S.C. § 1105a(a)(2) (1995).

[70]8 U.S.C. § 1105a(a)(10) (1995). *See* general discussion of the old scheme of judicial review and Congress' attempts as early as 1961 to streamline judicial review of deportations to avoid "interminable procedural delays" in deportations through overlapping modes of judicial review. *United States, ex rel. Marcello v. District Director,* 634 F.2d 964, 967-72 (5th Cir. Jan.1981) (INA § 106(a)(q) discussed in *Marcello* became INA § 106(a)(10).)

[71]*See, e.g., Orozco v. INS,* 911 F.2d 539, 541 (11th Cir.1990).

[72]Pub.L. No. 104-132, 110 Stat. 1214 (1996).

[73]*Id.*

26

that a final deportation order against an alien deportable for certain criminal offenses "shall not be subject to review by any court."[74]

Five months after the AEDPA, Congress enacted IIRIRA.[75] Section 306 of IIRIRA repealed the entire judicial-review scheme in INA § 106 and replaced it with a new judicial-review scheme in INA § 242. IIRIRA did not eliminate all judicial review. Instead, IIRIRA removed all jurisdiction from the district courts and consolidated judicial review into the court of appeals.[76] INA § 242(b)(2) provides that the venue for judicial review is only in the court of appeals.[77]

---

[74]AEDPA § 440(a) amended INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10) (1995), to read:

> Any final order of deportation against an alien who is deportable by reason of having committed a criminal offense covered in section 241(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i), shall not be subject to review by any court.

> *Id. See* footnote 83 *infra* for IIRIRA's amendments to INA § 106(a)(10). INA § 241 is codified in 8 U.S.C. § 1227 (Supp.1998).

[75]Pub.L. No. 104-208, 110 Stat. 3009 (1996).

[76]As outlined *infra* at footnote 93, INA § 242(e)(2) does provide for a truncated form of habeas review for non-resident aliens summarily rejected at ports of entry without any removal proceedings. 8 U.S.C. § 1252(e)(2) (Supp.1998). Throughout the remainder of this opinion, we repeatedly note that IIRIRA consolidates all judicial review into one procedure—a petition for review in the court of appeals after a final removal order has been issued. We note that INA § 242(e)(2), 8 U.S.C. § 1252(e)(2) (Supp.1998), remains a narrow exception to our statement about IIRIRA's providing for judicial review in only the court of appeals. Since that narrow exception applies only to non-resident aliens in limited circumstances, it has no applicability here or to any immigration cases involving resident aliens.

[77]INA § 242(b)(2), 8 U.S.C. § 1252(b)(2) (Supp.1998), provides:

> The petition for review shall be filed with the court of appeals for the judicial circuit in which the immigration judge completed the proceedings.

> *Id.*

More importantly, INA § 242(g), entitled "Exclusive Jurisdiction," provides that *except as provided in INA § 242,* no court shall have jurisdiction over aliens' claims arising from the Attorney General's decisions or actions, as follows:

> Except as provided in this section [242] and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to commence proceedings, adjudicate cases, or execute removal orders against any alien under this Act.

INA § 242(g).[78]

IIRIRA also mandated the timing of the INA's exclusive judicial review. INA § 242(b)(9) proscribes that judicial review shall be only after a final removal order, as follows:

> Judicial review of all questions of law and fact, including interpretation and application of constitutional and statutory provisions, arising from any action taken or proceeding brought to remove an alien from the United States under this chapter shall be available only in judicial review of a final order under this section.

INA § 242(b)(9).[79] INA § 242(d)(1) mandates that "a court may review a final order of removal only if ... the alien has exhausted all administrative remedies available ..."[80]

---

[78]8 U.S.C. § 1252(g) (Supp.1998). This Court recently held that INA § 242(g) divests district courts of jurisdiction over removal orders under former INA § 106(a)(10) and that "judicial review of orders of removal may only be initiated in the court of appeals" under the INA. *Auguste v. Reno,* 152 F.3d 1325, 1328 (11th Cir.1998). *Auguste* did not address judicial review under § 2241 habeas because Auguste, a non-criminal alien in custody, filed a habeas petition in the district court pursuant to only INA § 106(a)(10) which provided for habeas review under the old INA. The AEDPA repealed the habeas review in INA § 106(a)(10) and replaced it with the version of INA § 106(a)(10) that restricted judicial review of deportation orders against criminal aliens. Thus, whether INA § 242(g) repealed § 2241 was not discussed in *Auguste.*

[79]INA § 242(b)(9), 8 U.S.C. § 1252(b)(9) (Supp.1998).

[80]8 U.S.C. § 1252(d)(1) (Supp.1998). IIRIRA imposes other timing requirements to expedite judicial review. The petition for direct review in the court of appeals must be filed 30 days after a final order, as opposed to 90 days under the pre-IIRIRA version of the INA. *Compare* INA § 242(b)(1), 8 U.S.C. § 1252(b)(1) (Supp.1998), *with* former INA § 106a(a)(1), 8 U.S.C. § 1105a(a)(1) (Supp.1996).

In these new INA provisions, Congress has abbreviated judicial review to one place and one time: only in the court of appeals and only after a final removal order and exhaustion of all administrative remedies. In IIRIRA, Congress strictly regulated the exclusive mode and timing of judicial review in order to remove overlapping jurisdiction and to prevent dilatory tactics previously used to forestall departure of aliens.

J. INA § 242(a)(2)(C) Restricts Review of Removal Orders Against Criminal Aliens

Even within the INA's exclusive judicial-review scheme, Congress further limited what a court of appeals can review after a final removal order. Of particular relevance to Richardson is INA § 242(a)(2)(C), which provides that no court shall have jurisdiction to review "any final order of removal against an alien who is removable" because of certain criminal convictions, as follows:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2) [covers certain controlled substance offenses] or 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 237(a)(2)(A)(i).

INA § 242(a)(2)(C).[81] Section 212(a)(2)[82] includes Richardson's cocaine-trafficking conviction.

New INA § 242(a)(2)(C) is similar to former INA § 106(a)(10) which also placed restrictions on judicial review of deportation orders against criminal aliens.[83] As detailed later, this Court has

---

[81]8 U.S.C. § 1252(a)(2)(C) (Supp.1998). INA § 212(a)(2) is codified in 8 U.S.C. § 1182(a)(2). INA § 237(a)(2) is codified in 8 U.S.C. § 1227(a)(2) (Supp.1998).

[82]8 U.S.C. § 1182(a)(2) (Supp.1998).

[83]*See* footnotes 74 and 176 in order to *compare* INA § 106(a)(10), as amended by the AEDPA, *with* INA § 242(a)(2)(C), as amended by IIRIRA. IIRIRA made two amendments to INA § 106(a)(10). First, IIRIRA § 306(d) eliminated the phrase "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are covered by section 241(a)(2)(A)(i)" and replaced it with the phrase "any offense covered by section 241(a)(2)(A)(ii) for which both predicate offenses are, without regard to the date of their commission, otherwise covered by

29

upheld the judicial review restrictions in former INA § 106(a)(10) as constitutional. *Boston-Bollers v. INS,* 106 F.3d 352 (11th Cir.1997).

K. INA § 242(a)(2)(B)(ii) Restricts Review of Discretionary Decisions

IIRIRA also limits other aspects of the exclusive judicial review remaining for aliens under the INA. INA § 242(a)(2)(B)(ii) limits judicial review of the Attorney General's discretionary decisions, as follows:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review—
>
> ...
>
> (ii) any other decision or action of the Attorney General the authority for which is specified under this title to be in the discretion of the Attorney General, other than the granting of relief under section 208(a).

INA § 242(a)(2)(B)(ii).[84]

---

section 241(a)(2)(A)(i)." IIRIRA § 306(d). This amendment was effective immediately and has been applied by several circuits. *Id.*

> IIRIRA's second amendment to INA § 106(a)(10) included more substantial changes, although the end result—new INA § 242(a)(2)(C)—is overall very similar to its predecessor. As a technical matter, IIRIRA repealed INA § 106(a)(10) and replaced it with new INA § 242(a)(2)(C). Altering the language of INA § 106(a)(10) in several respects, IIRIRA added the introductory phrase "Notwithstanding any other provision of law, no court shall have jurisdiction to review (4)27" and replaced INA § 106(a)(10)'s reference to a final order of "deportation" with a reference to a final order of "removal." Similarly, IIRIRA changed the citations listing the criminal offenses that precluded judicial review to the citations corresponding to the sections amended under IIRIRA. The cumulative result of the two amendments enacted by IIRIRA is new INA § 242(a)(2) which limits the judicial review of removal orders based on certain criminal convictions with language similar to that in former INA § 106(a)(10).

[84]8 U.S.C. § 1252(a)(2)(B)(ii) (Supp.1998). INA § 208(a) is codified in 8 U.S.C. § 1158(a) (Supp.1998). The INS asserts that INA § 242(a)(2)(B)(ii) is a complete bar to judicial review of any discretionary decision to deny bond and parole to Richardson. Even if that position is well founded, Richardson points out that he is not seeking review of the discretionary denial of bond and parole or the discretionary authority to delegate bond decisions to the INS district director.

IV. DISCUSSION

Against this backdrop, Richardson filed his habeas petition in the district court under 28 U.S.C. § 2241. Given IIRIRA's overhaul of the judicial-review scheme in immigration cases, the first question we must address is whether INA § 242(g), as enacted by IIRIRA, has eliminated federal jurisdiction under § 2241 over Richardson's habeas petition.[85]

A. INA § 242(g) Precludes § 2241 Habeas Jurisdiction Over Immigration Decisions

We begin by recognizing and applying established canons of statutory construction applicable to immigration statutes. First, ambiguities in the law are to be interpreted in favor of the alien.[86] Second, restrictions on jurisdiction are to be read narrowly, courts should not assume that

---

Instead, Richardson seeks review of his constitutional claims that denial of a bond by the INS district director, without a bond hearing before an immigration judge, violated his constitutional rights under the Due Process Clause of the Fifth Amendment. *See* footnote 179 *infra.*

[85]28 U.S.C. § 2241 (1994) states:

> (a) Writs of habeas corpus may be granted by the Supreme Court, any justice thereof, the district courts and any circuit judge within their respective jurisdictions. The order of a circuit judge shall be entered in the records of the district court of the district wherein the restraint complained of is had.

> (b) The Supreme Court, any justice thereof, and any circuit judge may decline to entertain an application for a writ of habeas corpus and may transfer the application for hearing and determination to the district court having jurisdiction to entertain it.

*Id.*

[86]*INS v. Cardoza-Fonseca,* 480 U.S. 421, 449, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987); *Fong Haw Tan v. Phelan,* 333 U.S. 6, 9-10, 68 S.Ct. 374, 92 L.Ed. 433 (1948).

jurisdiction is repealed unless the statute says so explicitly, and repeals by implication of jurisdictional statutes are disfavored.[87]

Although guided by these same principles, courts are divided on whether the new INA § 242(g) abrogates statutory habeas, as provided in § 2241, over an alien's petition challenging detention or a final removal order. *See Hose v. INS,* 141 F.3d 932, 934-35 (9th Cir.1998) (holding that INA § 242(g) deprives district court of habeas corpus jurisdiction pursuant to 28 U.S.C. § 2241);[88] *Cabrera v. Reno,* 5 F.Supp.2d 244, 245-46 (D.N.J.1998) (same); *Ray v. Reno,* 3 F.Supp.2d 1249, 1251 (D.Utah 1998) (same); *Rusu v. Reno,* 999 F.Supp. 1204, 1209-10 (N.D.Ill.1998) (same); *Mendez-Tapia v. Sonchik,* 998 F.Supp. 1105, 1107 (D.Ariz.1998) (same); *Marriott v. Ingham,* 990 F.Supp. 209, 213-14 (W.D.N.Y.1998) (same); *Mustata v. United States Dep't of Justice,* 979 F.Supp. 536, 539 (W.D.Mich.1997) (same); *Mayers v. Reno,* 977 F.Supp. 1457, 1461 (S.D.Fla.1997) (same); *Udenze v. Strapp,* 977 F.Supp. 418, 421 (N.D.Tex.1997) (same); *Moore v. District Director, INS,* 956 F.Supp. 878, 882 (D.Neb.1997) (same); *see also Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.) (stating in dicta that "effective April 1, 1997, § 306(a) of the IIRIRA [INA § 242] abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute"), *cert. denied sub nom, Katsoulis v. INS,* --- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605

---

[87]*See McNary v. Haitian Refugee Ctr.,* 498 U.S. 479, 496, 111 S.Ct. 888, 112 L.Ed.2d 1005 (1991); *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 670-72, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986).

[88]Although *Hose v. INS* held that INA § 242(g) repealed § 2241 habeas over a noncriminal alien's claims for discretionary relief, the Ninth Circuit subsequently held that INA § 242(g) is unconstitutional when applied to certain criminal aliens who cannot obtain judicial review under INA § 242(a)(2)(C). *Magana-Pizano v. INS,* 152 F.3d 1213 (9th Cir.1998). Therefore, the Ninth Circuit concluded that INA § 242(g) does not repeal § 2241 in its entirety but that criminal aliens may proceed in the district court under § 2241, whereas the non-criminal alien in *Hose* could not proceed under § 2241.

(1997). *But see Goncalves v. Reno,* 144 F.3d 110, 113, 120-21 (1st Cir.1998) (holding that IIRIRA did not eliminate § 2241 habeas corpus jurisdiction); *Jean-Baptiste v. Reno,* 144 F.3d 212, 218-20 (2d Cir.1998)[89] (same); *Tam v. INS,* 14 F.Supp.2d 1184, 1187-88 (E.D.Cal.1998) (same); *Lee v. Reno,* 15 F.Supp.2d 26, 37 (D.D.C.1998) (same); *Barrett v. INS,* 997 F.Supp. 896, 900 (N.D.Ohio 1998) (same); *Gutierrez-Martinez v. Reno,* 989 F.Supp. 1205, 1209 (N.D.Ga.1998) (same); *Morisath v. Smith,* 988 F.Supp. 1333, 1338 (W.D.Wash.1997) (same); *Mojica v. Reno,* 970 F.Supp. 130, 157 (E.D.N.Y.1997) (same).

After review, we conclude that INA § 242(g) abrogates jurisdiction over Richardson's § 2241 habeas corpus petition for several reasons. First, the language of INA § 242(g) is plain and clear. INA § 242(g)'s language that "[e]xcept as provided in this section [242] ... no court shall have jurisdiction" clearly and unequivocally precludes any jurisdiction in the district court except that provided in INA § 242.[90] INA § 242 does not permit the kind of habeas corpus review in the district court Richardson sought. Instead, INA § 242 provides for judicial review for aliens only in the court of appeals and only after a final removal order.

More importantly, INA § 242(g)'s broad admonition that it applies "notwithstanding *any* other provision of law" sufficiently and clearly encompasses other provisions of law, such as § 2241.[91] When Congress says "any," it means "any" law, which necessarily includes § 2241.[92]

---

[89]A subsequent Second Circuit decision in *Henderson v. INS,* 157 F.3d 106, 119 n. 9 (2d Cir.1998), followed *Jean-Baptiste* but noted that "[w]ere we not bound by *Jean-Baptiste,* the members of the panel would be strongly inclined to find that the proper mechanism for judicial review is by petition for review in the courts of appeals, rather than by § 2241 habeas in the district courts."

[90]*See Auguste v. Reno,* 152 F.3d 1325, 1328 (11th Cir.1998), and footnote 78 *supra.*

[91]8 U.S.C. § 1252(g) (emphasis supplied). *See, e.g., United States v. Gonzales,* 520 U.S. 1, ----, 117 S.Ct. 1032, 1035, 137 L.Ed.2d 132 (1997) ("Read naturally the word "any' has an

33

In addition, while INA § 242 consolidates judicial review in the court of appeals for aliens, there is another section within INA § 242 that does permit limited habeas corpus review under INA § 242*(e)(2)*[93] for certain *non-resident* arriving aliens. INA § 235(b)(1) permits a single immigration officer to remove summarily a *non-resident* arriving alien without a removal hearing or review,

---

expansive meaning, that is "one or some indiscriminately of whatever kind.' ") (citation omitted); *Merritt v. Dillard Paper Co.,* 120 F.3d 1181, 1185 (11th Cir.1997) (" "Congress did not add any language limiting the breadth of that word,' so "any' means all.") (*quoting in part Gonzales, supra* ).

[92]On other occasions, this Court found that "notwithstanding any other provision of law" means precisely "notwithstanding any other provision of law," especially where the Court's jurisdiction is involved. *Allen v. David,* 334 F.2d 592, 597-98 (5th Cir.1964); *United States v. Sykes,* 310 F.2d 417, 419-20 (5th Cir.1962).

[93]INA § 242(e)(2), 8 U.S.C. § 1252(e)(2) (Supp.1998), provides for habeas review for non-resident arriving aliens subject to expedited and summary removal under 8 U.S.C. § 1225(b)(1):

> (2) Habeas corpus proceedings
>
> Judicial review of any determination made under section 235(b)(1) is available in habeas corpus proceedings, but shall be limited to determinations of—
>
> > (A) whether the petitioner is an alien,
> >
> > (B) whether the petitioner was ordered removed under such section, and
> >
> > (C) whether the petitioner can prove by a preponderance of the evidence that the petitioner is an alien lawfully admitted for permanent residence, has been admitted as a refugee under section 207, or has been granted asylum under section 208 of this title, such status not having been terminated, and is entitled to such further inquiry as prescribed by the Attorney General pursuant to Section 235(b)(1)(C).

INA § 242(e)(2), 8 U.S.C. § 1252(e)(2) (Supp.1998). INA § 235(b)(1) is codified in 8 U.S.C. § 1225(b)(1) (Supp.1998). INA § 207 is codified in 8 U.S.C. § 1157 (Supp.1998). INA § 208 is codified in 8 U.S.C. § 1158 (Supp.1998). This procedure, originally called "summary exclusion," was created by the AEDPA but modified by IIRIRA before taking effect.

unless the alien indicates an intention to apply for asylum or indicates fear of persecution.[94] Therefore, INA § 242(e)(2) provides for statutory habeas review under the INA in this narrowly limited situation.[95] This evidences Congress' ability to create statutory habeas review under the INA when it so desires. Congress' express provision of some limited habeas review *within § 242 of the INA* underscores Congress' clear intent in INA § 242(g) that no court shall have jurisdiction over immigration decisions *except as provided under INA § 242.*[96]

Second, in addition to the sweeping language of new INA § 242(g), the elimination of INA § 106(a)(10)'s habeas corpus review by the AEDPA further evidences congressional intent to preclude statutory habeas corpus review over immigration decisions. AEDPA § 440 first eliminated the specific habeas review granted under former INA § 106(a)(10).[97] Then IIRIRA enacted the broad language of INA § 242(g) that "notwithstanding any other provision of law, no court shall have jurisdiction except as provided under INA § 242."[98] Thus, the AEDPA and IIRIRA reflect Congress' clear intent to avoid unduly protracted litigation over removal orders against resident aliens by consolidating all judicial challenges in the courts of appeals under INA § 242(b)(2) after a final removal order, and by removing all district-court jurisdiction, including § 2241 habeas

---

[94]INA § 235(b)(1), 8 U.S.C. § 1255(b)(1) (Supp.1998).

[95]*See* footnote 93.

[96]*See, e.g., United States v. White,* 118 F.3d 739, 742 (11th Cir.1997) ("The selection of the statutes set forth [in the Act] reflects an intent to omit all others."); *United States v. Koonce,* 991 F.2d 693, 698 (11th Cir.1993) ("The canon of statutory construction that the inclusion of one implies the exclusion of others is well-established.").

[97]Pub.L. No. 104-132, 110 Stat. 1214 (1996).

[98]8 U.S.C. § 1252(g) (Supp.1998).

jurisdiction, over immigration decisions.[99]  Accordingly, we conclude that INA § 242(g) repeals any statutory jurisdiction over immigration decisions other than that conferred by INA § 242.  That repeal includes § 2241 habeas jurisdiction over immigration decisions by the Attorney General under the INA.

Richardson's main argument is that § 2241 habeas corpus jurisdiction survives IIRIRA's enactment of new INA § 242(g) because INA § 242(g) fails to mention § 2241 expressly.[100]  Richardson emphasizes the presumption against implied repeal of habeas corpus jurisdiction addressed in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996).

However, the jurisdictional repeal at issue in *Felker* was much narrower than the repealing language of INA § 242(g).  AEDPA § 106(b)(3)(E) repealed a narrow class of Supreme Court jurisdiction—the Court's review of a court of appeals decision denying or granting authorization to file a second or successive habeas corpus petition.[101]  In addition, AEDPA § 106(b) specifically cited

---

[99]*See, e.g.,* H. Rep. No. 104-469(I) (1996).  Indeed, INA § 242(g), along with INA § 242(b)(9), should be properly understood not as an attempt to divest the courts of jurisdiction they previously possessed, but as Congress' effort to make absolutely clear what should have been apparent under the INA and AEDPA all along:  that review of INS' conduct of deportation proceedings is available only after the entry of a final order of deportation, and only under the INA provisions specifically provided for that purpose.

[100]Richardson also asserts that INA § 242(g) affects only final removal orders and that the INS ignores the critical distinction between review of interim detention orders—denying admission, bond and parole—and review of final removal orders.  We disagree.  The INS' interim orders and actions are not collateral proceedings but are inextricably part of the removal proceedings and covered by the broad language of INA § 242(g).  *See, e.g., United States v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *Massieu v. Reno,* 91 F.3d 416 (3d Cir.1996).

[101]*Felker,* 518 U.S. at 661, 116 S.Ct. 2333.  Specifically, AEDPA § 106(b)(3)(E) states "the grant or denial of an authorization by a court of appeals to file a second or successive application shall not be appealable and shall not be the subject of a petition for rehearing or for writ of certiorari."  28 U.S.C. § 2244(b)(3)(E) (Supp.1998).

36

§ 2244(b) as the statute it amended. In *Felker,* the Supreme Court determined that this express prohibition of a specific, limited form of judicial review of second or successive habeas corpus petitions, did not also repeal by implication the Supreme Court's original jurisdiction to entertain habeas petitions.[102]

Conversely, the repeal of jurisdiction under INA § 242(g) is much broader. INA § 242(g) does not address a limited set of statutory provisions. Instead, the jurisdiction-repealing language in INA § 242(g) states comprehensively that "[e]xcept as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction" over the specified claims.[103] INA § 242(g) expressly repeals any and all jurisdiction except that conferred by INA § 242. Unlike *Felker,* the language of INA § 242(g) does not require repeal by implication. Indeed, Congress could hardly have chosen broader language to convey its intent to repeal any and all jurisdiction except that provided by INA § 242.

Based on the foregoing, we conclude that INA § 242(g) repealed § 2241 habeas jurisdiction over Richardson's claims challenging his executive detention without bond and removal order and that the district court erred in exercising jurisdiction under § 2241.

B. No Constitutional Infirmities to Avoid

Richardson asserts that IIRIRA's elimination of § 2241 jurisdiction means he has no judicial review of his executive detention. Although conceding many aliens can still obtain judicial review in the court of appeals under the INA, Richardson stresses that other limitations within the INA's judicial-review scheme result in his having no judicial review whatsoever. Richardson contends,

---

[102]*Felker,* 518 U.S. at 660, 116 S.Ct. 2333.

[103]8 U.S.C. § 1252(g) (Supp.1998).

for example, that INA § 242(a)(2)(C) adds other limits to the judicial review available to criminal aliens and thus he has no judicial review under the INA. Richardson argues that no judicial review whatsoever of his executive detention violates the Due Process Clause, Article III, and the Suspension Clause. For those reasons, Richardson submits INA § 242(g) cannot repeal § 2241 habeas.

The INS responds that INA § 242(g)'s repeal of § 2241 habeas jurisdiction over immigration decisions creates no constitutional infirmities because the INA does not eliminate all judicial review for Richardson. According to the INS, these new INA provisions, enacted by IIRIRA, do not "operate to bar the court of appeals from redressing substantial claims of constitutional error as part of the petition for review" of any final removal order against criminal aliens. The INS and Richardson vigorously dispute how much judicial review is required under the INA to avoid constitutional infirmities arising from the INA's repeal of § 2241 habeas jurisdiction over immigration decisions. The INS concedes only that any constitutionally required judicial review of administrative agency decisions must occur under the INA and in the form of a petition for review in the court of appeals after a final removal order.

Richardson rejoins that the other circuits have held that INA § 242(g) does *not* repeal § 2241 habeas, in large part, to avoid what the Second Circuit described as "serious constitutional issues" in *Jean-Baptiste*[104] or what the First Circuit termed "serious, novel and complex constitutional issues" in *Goncalves,* stating:

> Finally, our refusal to find express repeal of § 2241 in new INA § 242(g) eliminates the need to address serious, novel and complex constitutional issues. We would be loathe to find a

---

[104]144 F.3d at 219.

repeal where that repeal creates serious constitutional problems.  We note these constitutional concerns briefly to underscore the wisdom of avoiding them.

*Goncalves,* 144 F.3d at 122.[105]  Similarly, in *Jean-Baptiste,* the Second Circuit outlined how historically habeas was available to aliens, why permanent resident aliens enjoy procedural due process rights, and avoided what it foresaw as "serious constitutional issues" under the Suspension Clause and Due Process Clause.  *Jean-Baptiste,* 144 F.3d at 219.  The Second Circuit worried that without § 2241 habeas, a permanent resident criminal alien would lack a forum in which to vindicate substantial constitutional rights.  *Id.*[106] We agree with Richardson that both the First and Second

---

[105]Goncalves was a 25-year permanent resident alien subject to a deportation order because of certain criminal convictions.  144 F.3d at 114.  His application for discretionary relief under former INA § 212(c), 8 U.S.C. § 1182(c), was denied by the INS because the AEDPA made him ineligible for such relief.  *Id.* AEDPA § 440(d) greatly expanded the category of criminal convictions rendering an alien ineligible to apply for INA § 212(c) relief.  *Id.* Goncalves filed a § 2241 habeas, rather than a petition for direct review in the court of appeals.  *Id.* at 115.  The First Circuit held that jurisdiction existed under § 2241 habeas, that § 2241 habeas encompassed legal issues based on statutory construction as well as constitutional claims, and that the AEDPA § 440(d) did not apply retroactively to Goncalves.  *Id.* at 123.  *But compare Boston-Bollers v. INS,* 106 F.3d 352 (11th Cir.1997) (holding AEDPA § 440(d), effective April 24, 1996, applies retroactively and listing six other circuits reaching same result).  *See* footnote 110 *infra.*

[106]In *Jean-Baptiste,* two permanent resident aliens and one conditional permanent resident alien faced deportation under INA §§ 241(a)(2)(B)(i) and 241(a)(2)(A)(iii) for criminal convictions involving controlled substances.  144 F.3d at 214.  Alleging that the INS' deportation procedures deprived them of due process, the aliens filed a proposed class action in district court in which they sought to enjoin their deportation proceedings.  *Id.* The district court dismissed the aliens' complaint for failure to state a claim upon which relief could be granted under Fed.R.Civ.P. 12(b)(6), and the aliens appealed.  *Id.*

> Holding that INA § 242(g) eliminated the district court's jurisdiction over the aliens' proposed class action, the Second Circuit affirmed the district court's dismissal of the complaint.  *Id.* at 218-20.  Nevertheless, the court held that INA § 242(g) did not repeal § 2241 jurisdiction over petitions for habeas relief by aliens facing removal from the United States.  *Id.* at 220.  The Second Circuit still dismissed the aliens' complaint because they "sought federal court jurisdiction under 28 U.S.C. § 1331, not habeas jurisdiction under U.S.C. § 2241."  *Id.* at 220.  However, the court noted that "in finding that § 2241 habeas review remains available for aliens deemed deportable under certain

Circuits' holdings that INA § 242(g) did *not* repeal § 2241, stemmed from their adopting a principle of "constitutional avoidance," as opposed to following the plain language of INA § 242(g).

We reject this "constitutional avoidance" approach for two reasons. First, although courts wisely prefer avoiding thorny constitutional issues, the language of INA § 242(g), in our view, is plain, unambiguous, and yields only one permissible statutory construction. *See United States v. Locke,* 471 U.S. 84, 96, 105 S.Ct. 1785, 85 L.Ed.2d 64 (1985) ("[c]ourts cannot press statutory construction "to the point of disingenuous evasion' even to avoid a constitutional question."); *American-Arab Anti-Discrimination Comm. v. Reno,* 132 F.3d 531, 532-33 (9th Cir.1997) (O'Scannlain, J., dissenting from the denial of rehearing en banc) ("Whatever the merits of constitutional avoidance might be, no court may "avoid' a perceived conflict when the text is unambiguous, as it is here. The avoidance canon, invoked with such abandon, amounts to nothing less than rewriting the statute."), *cert. granted,* --- U.S. ----, 118 S.Ct. 2059, 141 L.Ed.2d 137 (June 1, 1998).[107]

Second, examining, not avoiding, Richardson's constitutional concerns, we find that INA § 242(g)'s repeal of § 2241 habeas jurisdiction over immigration decisions does not violate the Due Process Clause and Article III because neither provision mandates judicial review of immigration decisions. This repeal also does not violate the Suspension Clause because Richardson still has adequate and effective judicial review available under the INA. In light of these significant constitutional issues, we outline why in considerable detail.

---

circumstances to raise constitutional questions, we express no opinion on the permissible scope of that review." *Id.*

[107]*See* footnote 169 *infra.*

C. Eleventh Circuit's *Boston-Bollers* Decision

This Circuit already has upheld as constitutional the similar, restricted judicial review afforded criminal aliens under former INA § 106(a)(10), enacted by the AEDPA. *Boston-Bollers v. INS,* 106 F.3d 352 (11th Cir.1997). Although decided before the effective date of IIRIRA's repeal of § 2241[108] and involving a slightly different statute, *Boston-Bollers* is our necessary starting point because it held that INA § 106(a)(10)'s precluding judicial review of a deportation order against a permanent resident criminal alien[109] did not violate the Due Process Clause or Article III.[110]

Quoting from *Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993), this Court recognized that the "responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches of the Federal Government," and that "over no conceivable subject is the legislative power of Congress more complete." *Boston-*

---

[108]*Boston-Bollers* was decided on February 5, 1997. Although Congress enacted IIRIRA on September 30, 1996, with some limited technical amendments thereafter in October 1996, IIRIRA § 309(a) provided for a general effective date of April 1, 1997. Although there is some dispute over whether certain parts of IIRIRA were effective immediately on September 30, 1996, or only after April 1, 1997, *Lalani v. Perryman,* 105 F.3d 334, 336 (7th Cir.1997), that question is of no continuing significance because both dates have now passed.

[109]Paul Boston-Bollers entered the United States as a lawful permanent resident in January 1987. 106 F.3d at 353. In 1992, Boston-Bollers pled guilty to second-degree murder which made him deportable under INA § 241(a)(2)(A)(iii) for a conviction of an "aggravated felony" as defined under the INA. *Id.*

[110]In holding that AEDPA applied retroactively to Boston-Bollers' pending appeal, this Court found that INA § 106(a)(10), as enacted by AEDPA § 440(d), did not impair Boston-Bollers' substantive rights but was a jurisdiction-eliminating statute. Therefore, this Court declined to apply the Supreme Court's presumption against the retroactive application of statutes which impair substantive rights, citing *Landgraf v. USI Film Products,* 511 U.S. 244, 265, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994). *Boston-Bollers,* 106 F.3d at 354 (listing six other circuits reaching same result). *See* footnote 105 *supra.*

41

*Bollers,* 106 F.3d at 355.[111]   Accordingly, this Court determined that INA § 106(a)(10) did not

violate the Due Process Clause because deportation is not a criminal proceeding or punishment and

no judicial review is guaranteed by the Due Process Clause, stating:

> This restriction of federal court jurisdiction does not violate the Due Process Clause.  As the
> Supreme Court stated in *Carlson v. Landon,* "[t]he power to expel aliens, being essentially
> a power of the political branches of government, the legislative and executive, may be
> exercised entirely though executive officers, with such opportunity for judicial review of
> their action as congress may see fit to authorize or permit." 342 U.S. 524, 537, 72 S.Ct. 525,
> 532-33, 96 L.Ed. 547 (1952) (internal quotation omitted).  And since "[d]eportation is not
> a criminal proceeding and has never been held to be punishment ... [n]o judicial review is
> guaranteed by the Constitution." *Id.* at 537, 72 S.Ct. at 533 (footnote omitted).  Because the
> Constitution does not give aliens the right to judicial review of deportation orders, section
> 440(a)(10) does not violate the Due Process Clause.

106 F.3d at 355.[112]

In addition, this Court concluded that former INA § 106(a)(10) did not offend Article III

because Congress and the executive branch exercise plenary authority over immigration regulation.

*Id.* at 355.  We also recognized that "the federal appellate courts have "jurisdiction to review certain

---

[111]*See also Shaughnessy v. United States ex rel. Mezei,* 345 U.S. 206, 210, 73 S.Ct. 625, 97 L.Ed. 956 (1953) (noting that this Court's decisions "have long recognized the power to expel or exclude aliens as a fundamental sovereign attribute exercised by the Government's political departments largely immune from judicial control.");  *Fiallo v. Bell,* 430 U.S. 787, 794-95, 97 S.Ct. 1473, 52 L.Ed.2d 50 (1977);  *Kleindienst v. Mandel,* 408 U.S. 753, 765-67, 92 S.Ct. 2576, 33 L.Ed.2d 683 (1972);  *Harisiades v. Shaughnessy,* 342 U.S. 580, 588-90, 72 S.Ct. 512, 96 L.Ed. 586 (1952).

[112]In *Carlson v. Landon,* 342 U.S. 524, 528-29, 72 S.Ct. 525, 96 L.Ed. 547 (1952), the alien brought a habeas corpus petition alleging his detention without bond violated the Due Process Clause of the Fifth Amendment and the Eighth Amendment.  Because the alien had access to a petition for habeas, there was no claim of conflict with the Suspension Clause. *Id.* at 528, 72 S.Ct. 525.  The Supreme Court found no Due Process Clause or Eighth Amendment violation for the reasons quoted above in *Boston-Bollers. Carlson,* 342 U.S. at 537, 72 S.Ct. 525.  However, in between these quotations about the executive and legislative power over expelling aliens, the Supreme Court also stated:  "This power is, of course, subject to judicial intervention under the "paramount law of the Constitution.' " *Carlson,* 342 U.S. at 537 n. 27, 72 S.Ct. 525 (citing a long line of Supreme Court precedent).

final orders of deportation and exclusion against aliens only because Congress has conferred it.' " 106 F.3d at 354 (quoting *Duldulao v. INS,* 90 F.3d 396, 399-400 (9th Cir.1996)). Accordingly, this Court concluded that INA § 106(a)(10)'s restricting judicial review of deportation orders against criminal aliens "not only does not violate Article III, it is illustrative of the concept of separation of powers envisioned by the Constitution." *Id.*

*Boston-Bollers* would resolve Richardson's constitutional concerns were it not for two facts: (1) when this Court interpreted former INA § 106(a)(10) in *Boston-Bollers,* IIRIRA's repeal of § 2241 was not yet effective, and (2) in a footnote, this Court in *Boston-Bollers* expressly recognized that whether INA § 106(a)(10) precluded judicial review of deportation orders against criminal aliens "via a writ of habeas corpus" was not presented in that appeal. *Id.* at 354 n. 1.[113]

While *Boston-Bollers* informs our analysis, we recognize that it was decided under INA § 106(a)(10) as enacted by the AEDPA, was not colored by the same constitutional concerns created by IIRIRA's repeal of § 2241 habeas in INA § 242(g), and did not address the restrictions now in INA § 242(a)(2)(C) on judicial review of deportation orders against criminal aliens. Nonetheless, we find that these additional circumstances still do not create constitutional infirmities in IIRIRA's

---

[113]*Boston-Bollers* was before this Court on a petition for direct review of a final deportation order. Both parties agreed "that the issue of whether section 440(a)(10) precludes judicial review of deportation orders via a writ of habeas corpus is not presented in this appeal." 106 F.3d at 354 n. 1. In *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.), *cert. denied sub nom, Katsoulis v. INS,* --- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997), the Seventh Circuit noted that four courts of appeal have rejected contentions that INA § 106(a)(10) violates the Constitution but the *Yang* court pointed out that "they observe that limited opportunity to apply for a writ of habeas corpus may remain," citing *Kolster v. INS,* 101 F.3d 785, 790-91 (1st Cir.1996); *Hincapie-Nieto v. INS,* 92 F.3d 27, 30-31 (2d Cir.1996); *Duldulao v. INS,* 90 F.3d 396, 399-400 & n. 4 (9th Cir.1996). *See also Morel v. INS,* 144 F.3d 248, 251 (3d Cir.1998); *Mansour v. INS,* 123 F.3d 423, 426 (6th Cir.1997); *Williams v. INS,* 114 F.3d 82, 83-84 (5th Cir.1997); *Fernandez v. INS,* 113 F.3d 1151, 1154 (10th Cir.1997).

new judicial-review scheme. We reach this conclusion not only for the reasons outlined in *Boston-Bollers* but also because Congress clearly has the authority (a) to repeal § 2241 jurisdiction over immigration decisions, (b) to legislate that all judicial review of immigration decisions must be exclusively under the INA, and (c) to regulate the exclusive mode and precise timing of that judicial review within the INA's provisions. As shown below, Congress' repeal of § 2241 and its enactment of the requirement that all judicial review now be exclusively under the INA, in the court of appeals, and after a final removal order do not violate the Due Process Clause, Article III, or the Suspension Clause. We now examine each such constitutional provision in turn.

D. Due Process Clause

Permanent resident aliens are protected by the Due Process Clause of the Fifth Amendment which provides that "[n]o person shall be ... deprived of life, liberty or property, without due process of law ..." U.S. Const. amend. V. Although the political branches exercise plenary control over the admission and removal of aliens, *INS v. Chadha,* 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983), this plenary authority is subject to the limits of the Constitution. *See, e.g., Galvan v. Press,* 347 U.S. 522, 531, 74 S.Ct. 737, 98 L.Ed. 911 (1954); *Carlson v. Landon,* 342 U.S. 524, 533, 72 S.Ct. 525, 96 L.Ed. 547 (1952).

While an alien seeking initial admission to the United States has no constitutional rights regarding an application for admission, *United States ex rel. Knauff v. Shaughnessy,* 338 U.S. 537, 542, 70 S.Ct. 309, 94 L.Ed. 317 (1950), "once an alien gains admission to our country and begins to develop the ties that go with permanent residence his constitutional status changes." *Landon v. Plasencia,* 459 U.S. 21, 32, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982). The Supreme Court has held that a permanent resident alien "continuously present" in the United States has a right to procedural due

process in any proceedings to remove that alien from the country.[114] *See, e.g., Reno v. Flores,* 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993); *Landon v. Plasencia,* 459 U.S. at 21, 103 S.Ct. 321.[115] At the core of the alien's due process rights is the right to notice of the nature of the charges and a meaningful opportunity to be heard. *See, e.g., Kwong Hai Chew v. Colding,* 344 U.S. 590, 596-98, 73 S.Ct. 472, 97 L.Ed. 576 (1953).

Removal proceedings under the INA are not criminal proceedings and are not summary ejection proceedings. *See Boston-Bollers v. I.N.S.,* 106 F.3d 352, 355 (11th Cir.1997). Instead,

---

[114]Although Richardson's leaving the United States may have changed his legal status under INA § 101(a)(13)(C) to an arriving alien "seeking admission" due to his criminal convictions, we assume solely for purposes of this case that it did not change his constitutional status in light of his thirty-year permanent residency in the United States.

    Specifically, the Supreme Court instructs that "[w]e do not regard the constitutional status which petitioner indisputably enjoyed prior to his voyage as terminated by that voyage. From a constitutional point of view, he is entitled to due process without regard to whether or not, for immigration purposes, he is to be treated as an entrant alien." *Kwong Hai Chew v. Colding,* 344 U.S. 590, 600, 73 S.Ct. 472, 97 L.Ed. 576 (1953). The alien in *Chew* was a lawful permanent resident who worked on an American ship. *Id.* at 592, 73 S.Ct. 472. He was on a voyage to the Far East for about four months. *Id.* at 594, 73 S.Ct. 472. Upon his return, he was denied entry to the United States under an immigration regulation which allowed the Attorney General to exclude certain aliens without a hearing when information relating to the exclusion would "be prejudicial to the public interest." *Id.* Thus, not only was Chew excluded and detained, he also was denied any notice of the reasons for his exclusion and any opportunity to challenge those reasons. In contrast, Richardson has been afforded extensive procedural safeguards in his removal proceedings.

[115]In *Landon v. Plasencia,* 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982), the Supreme Court stated: "although we have only rarely held that the procedures provided by the executive were inadequate, we developed the rule that a continuously present permanent resident alien has a right to due process ...," citing *United States ex rel. Vajtauer v. Com'r of Immigration,* 273 U.S. 103, 106, 47 S.Ct. 302, 71 L.Ed. 560 (1927); *Japanese Immigrant Case,* 189 U.S. 86, 100-101, 23 S.Ct. 611, 47 L.Ed. 721 (1903); *United States ex rel. Tisi v. Tod,* 264 U.S. 131, 133, 44 S.Ct. 260, 68 L.Ed. 590 (1924); *Low Wah Suey v. Backus,* 225 U.S. 460, 32 S.Ct. 734, 56 L.Ed. 1165 (1912).

removal proceedings are imbued with procedural safeguards that satisfy the Due Process Clause. The alien has the right to notice, the opportunity to present evidence and cross examine witnesses, and the right to do so with the assistance of counsel at a hearing before an immigration judge.[116] Given these procedural safeguards, no judicial review is required to provide the process due to a permanent resident alien facing removal. *See, e.g., Carlson v. Landon,* 342 U.S. 524, 537, 72 S.Ct. 525, 96 L.Ed. 547 (1952); *Boston-Bollers,* 106 F.3d at 354-55; *Yang v. INS,* 109 F.3d 1185, 1196-97 (7th Cir.), *cert. denied sub nom, Katsoulis v. INS,* --- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997).[117] Therefore, the fact that IIRIRA repeals § 2241 habeas jurisdiction over immigration decisions, provides for exclusive judicial review under the INA, and within that INA scheme further limits the mode, timing and types of issues for which Richardson can seek judicial review under the INA, does not violate the Due Process Clause.

We recognize that Richardson also asserts that the INA's limiting his bond requests in these removal proceedings to written request to the INS district director, without any judicial review by an immigration judge, deprives him of due process. We disagree. The sufficiency of that process is evaluated under the three factors outlined in *Mathews v. Eldridge,* 424 U.S. 319, 334-35, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976):(1) a petitioner's interest in additional procedures; (2) the "risk" of the procedure; and (3) the government's interest in the procedure. Richardson's "liberty interest" under

---

[116]*See* footnotes 62-67 *supra.*

[117]"The role of the judiciary is limited to determining whether the procedures meet the *essential standard of fairness* under the Due Process Clause and does not extend to imposing procedures that merely displace congressional choices of policy." *Landon v. Plasencia,* 459 U.S. 21, 32-33, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982) (emphasis supplied).

the Due Process Clause is weighty, although slightly attenuated given his resident alien status.[118]

However, the "risk" factor is low, as Richardson's counsel was able to make written bond and parole

requests to the INS district director, supported by evidence, which here included several documents

and affidavits on Richardson's behalf.

In contrast, the INS' interest is fairly high in its district director's being able to make parole

and bond decisions for arriving aliens facing removal proceedings in that district without a

subsequent hearing before an immigration judge. Given the volume of arriving aliens and numerous

ports of entry, it simplifies the procedures, expedites consideration, and reduces costs, while still

giving the alien an opportunity to request bond and parole.[119] Being the initial step in the removal

proceedings, the INS' bond and parole procedures also must be evaluated in light of the many

procedural safeguards in the overall removal proceedings. Indeed, Richardson received a plenary

removal hearing before an immigration judge. Richardson has shown no due process violation.

E. Article III

IIRIRA's repeal of § 2241 habeas over INS decisions also does not violate Article III. While

§ 2 of Article III extends the judicial power to "all cases ... arising under the Constitution," § 1 of

---

[118]*See, e.g., Matthews v. Diaz,* 426 U.S. 67, 80, 96 S.Ct. 1883, 48 L.Ed.2d 478 (1976) ("Congress regularly makes rules that would be unacceptable if applied to citizens.").

[119]Congress acts well within its plenary power in mandating detention of a criminal alien with an aggravated felony conviction facing removal proceedings. *See* INA § 236(c), 8 U.S.C. § 1226(c) (Supp.1998); TPCRs in IIRIRA § 303(b)(3). This poses no constitutional issue, for the Supreme Court already has stated that "[t]he Eighth Amendment has not prevented Congress from defining the classes of cases in which bail shall be allowed ..." *Carlson v. Landon,* 342 U.S. at 545, 72 S.Ct. 525. The Supreme Court has determined that bail need not be provided in all immigration cases. *Id.* at 546, 72 S.Ct. 525. More importantly, Richardson does not challenge the INS district director's denial of his release request as incorrect under the INS regulations or show why the opportunity to be heard by the regulations governing bond and parole was inadequate.

Article III provides that this judicial power shall be vested "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish." U.S. Const. art. III §§ 1, 2. Even if Richardson had no judicial review available in the district court under § 2241 or in the court of appeals under the INA, Article III does not mandate the judicial review of immigration decisions in any inferior court. Instead, Congress possesses the sole authority to establish the jurisdiction of the inferior federal courts.[120]

The jurisdiction of the inferior federal courts are created by statute and jurisdiction does not exist except to the extent conferred by statute. *Sheldon v. Sill,* 49 U.S. (8 How.) 441, 449, 12 L.Ed. 1147 (1850). Therefore, inferior federal courts must have some statutory basis upon which to retain jurisdiction regardless of the character of Richardson's claims. Similar to many congressionally enacted limits on federal jurisdiction, Article III does not preclude Congress from removing all judicial review over immigration decisions from the inferior courts.[121]

---

[120]*See Morel v. INS,* 144 F.3d 248, 251 (3d Cir.1998); *Chow v. INS,* 113 F.3d 659, 668 (7th Cir.1997); *Yang v. INS,* 109 F.3d 1185, 1196 (7th Cir.) *cert. denied sub nom, Katsoulis v. INS,* ---- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997). In finding lack of jurisdiction under former INA § 106(a)(10) over Morel's appeal of a final deportation order, the Third Circuit stated that "we do not see any deprivation of his rights which is of constitutional proportion," noting "the INS concedes that § 440(a) [INA § 106(a)(10) ] does not preclude Article III court review of claims of substantial Constitutional error." *Morel,* 144 F.3d at 251. Finding Morel's appeal raised only a "question of law," the Third Circuit concluded that "relevant Supreme Court authority does not mandate judicial review by an Article III court of questions of law underlying legislatively-created public rights such as immigration. *See Crowell v. Benson,* 285 U.S. 22, 52 S.Ct. 285, 76 L.Ed. 598 (1932) (drawing a distinction between public and private rights and listing immigration as an exemplar of a public right)." *Morel,* 144 F.3d at 252.

[121]Congress has established significant limits on federal jurisdiction throughout history and continuing today. For example, during the first century of the nation's existence, the inferior courts lacked federal-question jurisdiction; and, until 1976 the federal-question jurisdiction remained restricted by an amount-in-controversy requirement. *Yang v. INS,* 109 at 1195. The Seventh Circuit in *Chow v. INS,* 113 F.3d 659, 668 (7th Cir.1997), also outlined the following reasons why the AEDPA's enacting INA § 106(a)(10), restricting judicial review of deportation

F. Suspension Clause

Contending that he has no judicial review available under the INA, Richardson asserts that the Suspension Clause entitles him to judicial review, and thus Richardson argues INA § 242(g) cannot be read to repeal § 2241 habeas. The Suspension Clause provides that "[t]he Privilege of the Writ of Habeas Corpus shall not be suspended, unless when in Cases of Rebellion or Invasion the public Safety may require it." U.S. Const. art. I § 9. Since "the traditional Great Writ was largely a remedy against executive detention,"[122] the INS concedes that the Suspension Clause requires some limited judicial review of Richardson's executive detention. The INS emphasizes, however, that any constitutionally required judicial review (a) must be found under the INA and not § 2241 habeas,

---

orders against criminal aliens, does not offend Article III. Although Article III enumerates cases over which the judicial power shall extend, Article III, however, grants Congress the power "to ordain and establish" such lower federal courts and courts of appeal. *Keene Corp. v. United States,* 508 U.S. 200, 207, 113 S.Ct. 2035, 124 L.Ed.2d 118 (1993); *Northern Pipeline Const. Co. v. Marathon Pipeline Co.,* 458 U.S. 50, 57-60, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982); *Chow,* 113 F.3d at 670. The Constitution does not prescribe how much judicial power must vest in the inferior courts and leaves it to Congress to make that decision. *Id.* Thus, the Seventh Circuit found that the INA, that limits the lower courts' jurisdiction, is not unconstitutional unless it confers powers not enumerated in the Constitution. *Sheldon,* 49 U.S. (8 How.) at 449. Therefore, the court concluded that the INA does not offend Article III or the separation of powers. *Id.*

[122]*Swain v. Pressley,* 430 U.S. at 386, 97 S.Ct. 1224 (Burger, C.J., concurring). The Second Circuit also emphasized that "[t]he primary historical use of the writ of habeas corpus was precisely against executive detention. *See Felker,* 518 U.S. at 663, 116 S.Ct. 2333 (noting that the writ originally only extended to prisoners in federal custody who were not "detained in prison by virtue of the judgment of a court' (citation and internal quotation marks omitted))." *Henderson,* 157 F.3d at 120; *see also Brown v. Allen,* 344 U.S. 443, 533, 73 S.Ct. 397, 97 L.Ed. 469 (1953) (Jackson, J., concurring) ("[T]he historic purpose of the writ has been to relieve detention by executive authorities without judicial trial.").

49

and (b) is limited to only "substantial constitutional claims" or "substantial claims of constitutional error."[123]

The Supreme Court has not defined the level of judicial review preserved by the Suspension Clause, unaided by § 2241 or its precursor statutes, because statutory habeas review historically has been available since 1789.[124] Both parties repeatedly cite *Heikkila v. Barber,* 345 U.S. 229, 73 S.Ct.

---

[123]The Second Circuit in *Henderson* observed that "the government itself does not argue that the 1996 amendments completely forbid judicial review of deportation against criminal aliens.... In its view, the courts are only empowered to examine petitions presenting "substantial' or "colorable' constitutional claims, and not petitions involving "mere' questions of statutory law." *Henderson,* 157 F.3d at 119. As the Second Circuit also noted, "[a]nd well [the INS] might concede this point, for the Supreme Court decided more than seventy-five years ago that the Constitution required judicial review of the executive's decision that a person facing deportation was a non-citizen." *Henderson,* 157 F.3d at 122 n. 14 (citing *Ng Fung Ho v. White,* 259 U.S. 276, 42 S.Ct. 492, 66 L.Ed. 938 (1922)). In *Ng Fung Ho,* the Supreme Court stated that the precise question in that habeas petition was whether a claim of citizenship by a resident entitles him to judicial review of his claim. 259 U.S. 276, 282, 42 S.Ct. 492, 66 L.Ed. 938 (1922). The Court held that "[j]urisdiction in the executive to order deportation exists only if the person arrested is an alien. The claim of citizenship is thus a denial of an essential jurisdictional fact." *Id.* at 284, 42 S.Ct. 492.

[124]The United States Constitution became effective on March 4, 1789. In September 1789, the First Congress passed the Judiciary Act of 1789. Section 14 of the Judiciary Act granted the federal courts jurisdiction to issue writs of habeas corpus. 1 Stat. 81 (1789).

In 1867, Congress significantly expanded federal jurisdiction to issue writs of habeas corpus. 14 Stat. 385 (1867). The Supreme Court has recognized that this amendment to federal habeas jurisdiction increased the scope of habeas review beyond the "bare legal review" of the common-law writ. *Johnson v. Zerbst,* 304 U.S. 458, 466, 58 S.Ct. 1019, 82 L.Ed. 1461 (1938); *see also McCleskey v. Zant* 499 U.S. 467, 477, 111 S.Ct. 1454, 113 L.Ed.2d 517 (1991) (noting *inter alia* that the 1867 amendments expanded availability of the writ in federal court to people held in state custody). Accordingly, the Court has concluded that this revision to habeas jurisdiction conferred on federal courts the ability to determine the legality and constitutionality of a person's detention even if "the proceedings resulting in incarceration may be unassailable on the face of the record." *United States v. Hayman,* 342 U.S. 205, 212, 72 S.Ct. 263, 96 L.Ed. 232 (1952).

Over the years, Congress amended habeas jurisdiction several times. For the

50

603, 97 L.Ed. 972 (1953), in which the Supreme Court held that "the 1917 Immigration Act ... clearly had the effect of precluding judicial intervention in deportation cases except insofar as it was required by the Constitution." *Id.* at 234-35, 73 S.Ct. 603. The Supreme Court upheld the preclusion of judicial review in the 1917 Act, but in the context of statutory habeas remaining available, stating:

> The rule which we reaffirm recognizes the legislative power to prescribe applicable procedures for those who would contest deportation orders. Congress may well have thought that habeas corpus, despite its apparent inconvenience to the alien, should be the exclusive remedy in these cases in order to minimize opportunities for repetitious litigation and consequent delays as well as to avoid possible venue difficulties connected with any other type of action.

*Id.* at 237, 73 S.Ct. 603. Thus, *Heikkila* does not resolve the issue here of whether IIRIRA's repeal of § 2241 habeas would violate the Suspension Clause if Richardson has no judicial review under the INA.[125]

---

most part, these amendments have related to the form and procedure for seeking the writ and to the codification of federal statutes in 1874 and 1948. Rev. Stat. §§ 751-766 (1874); 62 Stat. 869 (1948). However, the Supreme Court has recently recognized that the Judiciary Act of 1789 is the "direct ancestor" of 28 U.S.C. § 2241(a) and the 1867 amendments to the Judiciary Act are the "direct ancestor" of 28 U.S.C. § 2241(c). *Felker,* 518 U.S. at 659 n. 1 & 2, 116 S.Ct. 2338 n. 1 & 2; *see also Hayman,* 342 U.S. at 211 n. 11, 72 S.Ct. 263 (noting that the 1867 Act is [n]ow incorporated in 28 U.S.C. (Supp.IV) § 2241 et seq.)

[125]Both Richardson and the INS cite *Webster v. Doe,* 486 U.S. 592, 603, 108 S.Ct. 2047, 100 L.Ed.2d 632 (1988), which involved a discharge of a government employee based on sexual preference. Chief Justice Rehnquist's majority opinion in *Webster* states it reached certain conclusions "to avoid the "serious constitutional question' that would arise if a federal statute were construed to deny any judicial forum for a colorable constitutional claim." (quoting *Bowen v. Michigan Academy of Family Physicians,* 476 U.S. 667, 681 n. 12, 106 S.Ct. 2133, 90 L.Ed.2d 623 (1986)). Since we find that certain judicial review remains under the INA, as outlined *infra,* this case also does not present a denial of all judicial review.

Also, two dissents stated that judicial review is not required over constitutional claims challenging the validity of employment decisions by the Central Intelligence

Unguided by direct Supreme Court precedent, the Second, Seventh, and Ninth Circuits have thoughtfully addressed and reached different conclusions about what level of judicial review is protected by the Suspension Clause, what scope of judicial review the INA provides, and whether constitutional infirmities are created by INA § 242(g)'s repeal of § 2241 habeas jurisdiction over immigration decisions. The Second and Ninth Circuits have outlined in great detail the two-hundred year history of the Suspension Clause and why the Great Writ protected by the Suspension Clause (whether under an originalist approach as it existed in 1789 or today) requires judicial review of an alien's executive detention that is the equivalent of § 2241 habeas. *Magana-Pizano v. INS,* 152 F.3d 1213, 1217-21 (9th Cir.1998); *Henderson v. INS,* 157 F.3d 106, 112-21 (2d Cir.1998). In *Magana-Pizano,* the Ninth Circuit concluded that INA § 242(g)'s repeal of § 2241 habeas violated the Suspension Clause. In *Jean-Baptiste v. Reno,* 144 F.3d 212 (2d Cir.1998), the Second Circuit, in order to avoid the Suspension Clause issue, held that INA § 242(g) did not repeal § 2241 habeas. A subsequent panel of the Second Circuit in *Henderson* followed yet questioned the correctness of the *Jean-Baptiste* decision.

The Seventh Circuit took a different approach. After outlining the history of § 2241 habeas and the Suspension Clause, the Seventh Circuit agreed that "[a]liens may seek the writ that Art. I § 9 cl. 2 preserves against suspension." *Yang v. INS,* 109 F.3d 1185, 1195 (7th Cir.1997). However,

---

Agency. In his dissent, Justice Scalia pointed out that "the denial of all judicial review is not at issue," but "merely the denial of review in United States district courts." *Id.* at 611, 108 S.Ct. 2047. Since Article III, § 1 provides that the judicial power shall be vested "in one supreme Court, and in such inferior Courts as the Congress may from time to time ordain and establish," Justice Scalia stressed that "[w]e long ago held that the power not to create any lower federal courts at all includes the power to invest them with less than all the judicial power." *Id.* His dissent concluded that Congress can prescribe that for certain jobs, the dismissal decision is "committed to agency discretion by law" and "that not all constitutional claims require a judicial remedy." *Id.* at 614, 108 S.Ct. 2047.

the Seventh Circuit found that "28 U.S.C. § 2241 offers an opportunity for collateral attack more expansive than the Great Writ preserved in the Constitution." *Id.* While *Yang* 's direct holding involved the restrictions on a criminal alien's judicial review under former INA § 106(a)(10), the Seventh Circuit noted that "effective April 1, 1997, § 306(a) of the IIRIRA [INA § 242] abolishes even review under § 2241, leaving only the constitutional writ, unaided by statute." *Id.* The Seventh Circuit found that the particular errors of law and discretionary INS decision of which Yang, a criminal alien in custody, sought judicial review were simply not protected by the "Great Writ." *Id.* Similarly, the Seventh Circuit noted there is a "vast gulf between the non-suspendable constitutional writ" and certain other forms of judicial review, such as under the Administrative Procedures Act. *Id.*

Below we first discuss the different approaches of these three circuits in considerable detail. Second, we address IIRIRA's clear mandate that judicial review be exclusively after a final removal order—a factor we find not given sufficient weight by our sister circuits. Third, we outline why we find INA § 242(g)'s repeal of § 2241 habeas and its requirement of exclusive judicial review under the INA do not conflict with the Suspension Clause.

G. Second Circuit's *Henderson* Decision

When it decided *Henderson,* the Second Circuit in *Jean-Baptiste* already had held that INA § 242(g) did *not* repeal § 2241 habeas. *Jean-Baptiste v. Reno,* 144 F.3d 212, 218-19 (2d Cir.1998); *Henderson v. INS,* 157 F.3d 106, 119 (2d Cir.1998). Subsequently, in *Henderson* the Second Circuit revisited whether constitutional issues under the Suspension Clause are actually implicated by

53

IIRIRA's repeal of § 2241 habeas. Noting that it was bound by *Jean-Baptiste,* the Second Circuit in *Henderson* held that INA § 242(g) did not repeal § 2241.[126]

However, in a footnote, the Second Circuit in *Henderson* expressly acknowledged that "[w]ere we not bound by *Jean-Baptiste,* the members of this panel would be strongly inclined to find that the proper mechanism for judicial review is by petition for review in the courts of appeals, rather than by § 2241 habeas in the district courts."[127] The *Henderson* panel noted that Congress "clearly" meant to streamline judicial review and concluded that "*it seems perverse to find that the new laws [IIRIRA] actually added a layer of review in the district courts that did not generally exist before.*"[128]

The Second Circuit in *Henderson* noted that *Jean-Baptiste* expressly had reserved the question of the extent and nature of judicial review remaining available under the INA post-IIRIRA.[129] The *Henderson* panel rejected the INS' contention that judicial review under IIRIRA is limited to "substantial constitutional issues."[130] Instead, the Second Circuit indicated that

---

[126]*Henderson,* 157 F.3d at 119.

[127]*Id.* at 119 n. 9.

[128]*Id.* (emphasis supplied).

[129]*Henderson,* 157 F.3d at 119.

[130]*Id.* at 120. The Second Circuit also noted that the INS borrowed this standard from the standard for reviewing successive habeas petitions but observed that this standard arose in an entirely different context than presented under the immigration laws. *Id.* Specifically, the Second Circuit recognized that the substantial-constitutional-question standard applied to petitioners in state custody who had necessarily enjoyed several opportunities to challenge their detention before in a judicial forum. *Id.* (citing *Goncalves,* 144 F.3d at 118 n. 8). Conversely, according to the *Henderson* panel, aliens detained pending removal from the country are detained by the executive with no prior judicial review of their detention. *Henderson,* 157 F.3d at 120.

54

judicial review post-IIRIRA " "is much like it was prior to the enactment of the INA' and is similar to that which existed under the early statutes that were "intended to make these administrative decisions nonreviewable to the fullest extent possible under the Constitution.' "[131]   The Second Circuit then noted that the Attorney General's position that no court has power to review her interpretation of immigration laws "is, to put it mildly, not only at war with the historical record described earlier in this opinion—for at least a hundred years, the courts have reviewed the executive branch's interpretation of the immigration laws, and have deemed such review to be constitutionally mandated—it is also hard to square with the core conception of habeas corpus as it has been applied over many centuries."[132]

Ultimately, the Second Circuit in *Henderson* concluded only that whatever the remaining parameters of § 2241 relief in the immigration context, the claims presented by the *Henderson* aliens facing deportation fell within the remaining scope of § 2241.[133]  As its holding, the Second Circuit stated "federal courts have jurisdiction under § 2241 to grant writs of habeas corpus to aliens when those aliens are "in custody in violation of the Constitution or laws or treaties of the United States.' "[134]  But, the Second Circuit immediately qualified that holding by stating that "[t]his is not to say that every statutory claim that an alien might raise is cognizable on habeas."[135]  Instead, the court

---

[131]*Id.* at 119.

[132]*Id.*

[133]*Id.* at 122.  The aliens in *Henderson* presented questions of pure law.  The Second Circuit also noted, almost in passing, that judicial review under the INA as long as "the equivalent of habeas" would avoid any conflict with the Suspension Clause. *Henderson,* 157 F.3d at 119 n. 10.

[134]*Id.* at 122 (quoting 28 U.S.C. § 2241).

[135]*Id.*

concluded that the range of claims available under § 2241 consisted of "the sort that the courts have secularly enforced ... in the face of statutes seeking to limit judicial jurisdiction to the fullest extent constitutionally possible."[136]

## H. Ninth Circuit's *Magana-Pizano* Decision

Two recent Ninth Circuit decisions also address INA § 242(g)'s repeal of § 2241 habeas. In *Hose v. INS,* 141 F.3d 932, 935 (9th Cir.1998), the Ninth Circuit first held that INA § 242(g) repealed § 2241 jurisdiction, noting that the noncriminal alien in that case still could seek judicial review of the BIA's final deportation order under INA § 242(b)(2) in the court of appeals.[137]

---

[136]*Id.*

[137]In *Hose,* after receiving a final exclusion order on April 25, 1997, the alien filed a § 2241 habeas petition in the district court which was dismissed for lack of jurisdiction under INA § 242(g). 141 F.3d at 933-34. The alien appealed the district court's dismissal, but did not file a petition for direct review in the court of appeals and, importantly, did not request that the court of appeals treat her appeal of the district court's order as a petition for review. *Id.* at 934.

Affirming the district court's dismissal for lack of jurisdiction, the Ninth Circuit first noted that IIRIRA channeled judicial review to the court of appeals and that the language of INA § 242(g) was "clear" and sufficiently broad to convey congressional intent to repeal § 2241 jurisdiction. *Id.* at 935. The court reasoned that the rule disfavoring implicit repeals of jurisdictional statutes was followed in *Felker v. Turpin,* 518 U.S. 651, 116 S.Ct. 2333, 135 L.Ed.2d 827 (1996), because it was interpreting the AEDPA's repeal of a "specific avenue for review" (appellate jurisdiction over a successive habeas petition) and that repeal did not implicitly repeal another separate and distinct avenue for review (the Supreme Court's original habeas jurisdiction) which was not mentioned in the AEDPA. *Hose,* 141 F.3d at 935.

Conversely, the court in *Hose* found the clear language of INA § 242(g) provided that unless jurisdiction otherwise existed under INA § 242, no court could exercise jurisdiction to review a removal order. *Id.* Finally, the court in *Hose* concluded that the Suspension Clause did not prohibit this repeal because no suspension of the writ occurs if a substitute procedure exists that is "neither inadequate nor ineffective to test the legality of a person's detention." *Id.* at 936 (citing *Swain,* 430 U.S. at 381, 97 S.Ct. 1224). Since judicial review of exclusion orders remained available under IIRIRA in the form of direct review in the court of appeals, the court held that Ms. Hose had failed to demonstrate

Subsequently, in *Magana-Pizano v. INS,* 152 F.3d 1213, 1220 (9th Cir.), modified, 159 F.3d 1217 (9th Cir.1998), the Ninth Circuit held that, unlike the alien in *Hose,* a criminal alien cannot obtain full judicial review in the court of appeals due to INA § 242(a)(2)(C), that INA § 242(g)'s repeal of § 2241 jurisdiction as applied in that different context violated the Suspension Clause, and thus, § 2241 jurisdiction still existed over Magano-Pizano's deportation order.

In light of *Hose* 's holding that INA § 242(g) repealed § 2241, the Ninth Circuit could not construe INA § 242(g) to avoid constitutional issues. The Ninth Circuit found that *Heikkila* established the minimum constitutionally permissible level of judicial review in immigration cases and required the conclusion that, when Congress limits judicial review over immigration matters to the extent permitted by the Constitution, habeas remains available. In other words, the Ninth Circuit found that "[s]imply put, elimination of all judicial review of executive detention violates the Constitution."[138] Based on this premise, the Ninth Circuit concluded that, as interpreted in *Hose* and applied to cases for which no judicial review is available, INA § 242(g)'s repeal of § 2241 was invalid under the Suspension Clause.[139]

The Ninth Circuit thus has adopted a hybrid approach to whether INA § 242(g) repeals § 2241. For cases where judicial review remains in the court of appeals under the INA, the Ninth Circuit has interpreted INA § 242(g) as repealing § 2241 jurisdiction.[140] Conversely, for cases in which the Ninth Circuit finds that there is no judicial review under the INA, the Ninth Circuit has

how such review was either inadequate or ineffective to contest her detention.

[138]*Magana-Pizano,* 152 F.3d at 1220.

[139]*Id.*

[140]*Hose,* 141 F.3d at 936.

concluded that INA § 242(g) cannot constitutionally repeal § 2241 habeas and that some form of habeas relief remains available.[141]

I. Seventh Circuit's *Yang* Decision

Although involving former INA § 106(a)(10),[142] the Seventh Circuit's decision in *Yang v. INS,* 109 F.3d 1185, 1187 (7th Cir.), *cert. denied sub nom, Katsoulis v. INS,* --- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997), also contains an instructive analysis of the Suspension Clause and Congress' plenary power to remove judicial review over immigration decisions to the full extent permitted by the Constitution. The specific facts and legal issues in *Yang* are an important background to its holding that the INA does not preclude all judicial review of deportation orders against criminal aliens.

After finding that Yang's conviction for concealing stolen firearms was a deportable offense under INA § 241(a)(2)(C), the immigration judge ordered Yang deported because of this conviction, among other reasons.[143] On his petition for direct review in the court of appeals, Yang argued, *inter alia,* that he was not deportable under INA § 241(a)(2)(C) because his conviction for concealing stolen firearms was not a crime involving the "possession" of a firearm.[144] Although prior to IIRIRA's repeal of § 2241 habeas, Yang was still faced with a similar judicial review bar in former INA § 106(a)(10) which provided that "[a]ny final order of deportation against an alien who is

---

[141]*Magana-Pizano,* 152 F.3d at 1220.

[142]The Seventh Circuit in *Yang* interpreted INA § 106(a)(10) as it existed following IIRIRA's first amendment, but before it was amended the second time and moved to INA § 242(a)(C)(2). *See* footnotes 74 and 83 *supra* and 176 *infra.*

[143]*Id.* at 1189.

[144]*Id.* at 1191.

deportable by reason of having committed a criminal offense covered in section [designated sections omitted] ... shall not be subject to review by any court."[145]

According to the INS, Yang was not entitled to judicial review of his final deportation order because the BIA already had determined that he was an alien deportable based on one of the sections referenced in INA § 106(a)(10).[146] Like *Boston-Bollers,* the Seventh Circuit held that INA § 106(a)(10)'s restrictions on judicial review of Yang's deportation order did not violate the Due Process Clause or Article III.[147] The Seventh Circuit also discussed how the review protected by the Suspension Clause is not co-extensive with § 2241 habeas as follows:

> Aliens may seek the writ that Art. I § 9 cl. 2 preserves against suspension. But we are reluctant to place weight on its availability, because the Supreme Court long ago made it clear that this writ does not offer what our petitioners desire: review of discretionary decisions by the political branches of government. [Citations omitted.] There is a vast gulf between the non-suspendable constitutional writ and the Administrative Procedure Act. [Citations omitted.] Similarly, in cases under 28 U.S.C. § 2254, "[a] a federal court may not issue the writ on the basis of a perceived error of state law." *Pulley v. Harris,* 465 U.S. 37, 41, 104 S.Ct. 871, 875, 79 L.Ed.2d 29 (1984). [Citations omitted.] Likewise with errors of federal law. See *United States v. Caceres,* 440 U.S. 741, 752, 99 S.Ct. 1465, 1472, 59 L.Ed.2d 733 (1979) (error "by an executive agency in interpreting its own regulations surely does not raise any constitutional concerns"); *Czerkies,* 73 F.3d at 1443 ("The government does not violate the Constitution every time it mistakenly denies a claim for benefits."). As a practical matter, the right to obtain review, in any court, on the theories our petitioners advance is gone. *That is the point of the legislation. Congress wanted to expedite the removal of criminal aliens from the United States by eliminating judicial review, not to delay*

---

[145]INA § 106(a)(10), 8 U.S.C. § 1105a(a)(10) (1995).

[146]*Id.* at 1192. The *Yang* case actually involved petitions for review by four aliens in separate deportation proceedings. *Id.* According to the Seventh Circuit, in three of these four consolidated cases, the INS contended that the court lacked jurisdiction if the BIA determined that an alien was deportable based on one of the referenced criminal offenses. *Id.* Conversely, the court noted that in one of these cases, the INS adopted a different position. *Id.* Specifically, in the fourth case, the INS argued that the court retained jurisdiction over whether the alien facing deportation was actually an alien deportable for an enumerated offense. *Id.*

[147]*Id.* at 1197.

*removal by requiring aliens to start the review process in the district court rather than the court of appeals.*

*Yang,* 109 F.3d at 1195 (emphasis supplied). The Seventh Circuit in *Yang* recognized, as did the Second Circuit in *Henderson,* that Congress wanted to eliminate review in the district courts and allow review only in the court of appeals.

In addition to its Suspension Clause discussion, the Seventh Circuit in *Yang* explained how the INA does not abrogate all judicial review for criminal aliens because courts always have jurisdiction to determine whether a jurisdictional bar applies and to consider constitutional attacks on any such jurisdictional bar.[148] The Seventh Circuit explained succinctly that "a court has jurisdiction to determine whether it has jurisdiction."[149] The Seventh Circuit found that the language of INA § 106(a)(10) did not condition its restriction on judicial review merely on the Attorney General's saying that an alien is deportable for one of the enumerated criminal offenses.[150] Instead, the language of INA § 106(a)(10) conditioned its restriction on judicial review on there being "an alien" "who is deportable" "by reason of having committed a criminal offense" enumerated in the statute.[151] The Seventh Circuit noted that "[w]hen judicial review depends on a particular fact or legal conclusion, then a court may determine whether that condition exists."[152] Therefore, the Seventh Circuit held that INA § 106(a)(10) permitted courts to exercise jurisdiction to determine

---

[148]*Id.* at 1192.

[149]*Id.*

[150]*Id.*

[151]*Id.*

[152]*Id.* at 1192 (citing *Land v. Dollar,* 330 U.S. 731, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947), for the proposition that the court retains jurisdiction to determine its own jurisdiction).

these three threshold issues in order to decide whether the jurisdictional bar in INA § 106(a)(10) applies: (1) whether the person is an alien, (2) whether the alien is deportable, and (3) whether deportation is based on an enumerated criminal offense.[153]

Without as extensive a discussion as in *Yang,* the Fifth Circuit in *Anwar v. INS,* 116 F.3d 140, 144 (5th Cir.1997), likewise concluded that even under INA § 106(a)(10)'s restrictions on judicial review, it could still exercise some jurisdiction over the alien's petition for review.[154] The

---

[153]*Id.* at 1191-92.

[154]As did the Ninth Circuit in *Coronado-Durazo v. INS,* 123 F.3d 1322 (9th Cir.1997), the Fifth Circuit in *Anwar* applied the pre-IIRIRA version of INA § 106(a)(10). 116 F.3d at 144. However, unlike in *Coronado-Durazo,* the fact that the pre-IIRIRA version of INA § 106(a)(10) applied in *Anwar* meant that the court could exercise jurisdiction over the alien's petition for review. Specifically, the court in *Anwar* noted that prior to IIRIRA, INA § 106(a)(10) precluded the judicial review of a deportation order of an alien who was deportable under INA § 212(a)(2)(A)(ii) (i.e. for multiple criminal convictions of crimes involving moral turpitude) only if both "predicate offenses" were also covered by INA § 212(a)(2)(A)(i). *Id.* An alien was deportable under INA § 212(a)(2)(A)(i) only if the alien had been convicted of a crime involving moral turpitude which crime occurred within five years of when the alien entered the United States and for which the alien was sentenced to confinement for one year or more. *Id.* Because one of Anwar's crimes had occurred more than five years after he entered the United States, the court concluded that his multiple convictions did not fall under INA § 212(a)(2)(A)(i) and thus did not fall under the jurisdictional bar of the pre-IIRIRA INA § 106(a)(10). *Id.*

We note that the Fifth Circuit has recognized an inconsistency between an earlier Fifth Circuit decision, *Pichardo v. INS,* 104 F.3d 756 (5th Cir.1997), and a portion of the *Anwar* decision that is not at issue in this case. *Okoro v. INS,* 125 F.3d 920, 924-25 (5th Cir.1997)(noting the inconsistency between these two decisions); *Anwar,* 116 F.3d at 143 n. 2. In *Pichardo,* the Fifth Circuit applied the version of INA § 106(a)(10) that included IIRIRA's first amendment to this section—the amendment adding the phrase "without regard to the date of their commission" to INA § 106(a)(10). However, the court in *Anwar* applied INA § 106(a)(10) "unamended by IIRIRA." 116 F.3d at 143. The court in *Okoro* decided to follow the earlier decision of *Pichardo. Okoro,* 125 F.3d at 925. Nevertheless, neither *Pichardo* nor *Okoro* diminish the aspect of the *Anwar* decision that illustrates the jurisdictional analysis discussed in *Yang.* Indeed, as was the case in *Anwar* and *Yang,* the court in *Pichardo* also exercised its jurisdiction to the extent necessary to determine whether it could exercise further jurisdiction. 104 F.3d 758-59. In addition, as discussed below, *Okoro* expressly adopts a holding that is very similar to

61

Fifth Circuit noted that under INA § 106(a)(10), "unamended by IIRIRA," judicial review was precluded if deportation was based on two convictions for a crime involving moral turpitude only if both of the convictions occurred within five years of when the alien entered the United States.[155] Because one of Mr. Anwar's criminal convictions occurred more than five years after he entered the United States, the Fifth Circuit concluded that the jurisdictional bar of INA § 106(a)(10) did not apply.[156] Accordingly, the Fifth Circuit proceeded to review the alien's petition.[157]

Despite its lack of extensive discussion, the *Anwar* decision illustrates the same concept followed in *Yang*. The Fifth Circuit did not simply decline to exercise jurisdiction based on the INS' asserted grounds for deportation. Instead, the Fifth Circuit conducted its own review of the allegations supporting deportation to determine whether these allegations prohibited further judicial review. Finding that the judicial-review limiting provisions of INA § 106(a)(10) did not apply, the Fifth Circuit proceeded to entertain the alien's claims.[158]

the holding in *Yang. Okoro,* 125 F.3d at 925.

[155]*Id.* at 143-44.

[156]*Id.*

[157]*Id.* at 144.

[158]Likewise, the First Circuit in *Choeum v. INS,* 129 F.3d 29, 38 (1st Cir.1997), found the jurisdictional bar in INA § 106(a)(10) did not apply because the deportation order was based on a criminal offense not covered by that section. Although the alien had other criminal offenses which were not charged in the deportation proceedings, the court held "that the INS cannot, consistent with due process and the statutory and regulatory requirements governing its own proceedings, substitute new grounds for deportation at this stage of the proceedings, solely for the purposes of depriving the federal courts of jurisdiction." 129 F.3d at 40.

Also, without extensive discussion, the Ninth Circuit reached a similar conclusion in *Coronado-Durazo v. INS,* 108 F.3d 210, *withdrawn by* 123 F.3d 1322, 1323 (9th Cir.1997). The alien facing deportation in *Coronado-Durazo* claimed that the immigration judge and BIA had erroneously concluded that the alien's conviction for

Moreover, in a subsequent decision, the Fifth Circuit expressly adopted the aspect of the *Yang* decision holding that the court of appeals can exercise jurisdiction in order to determine whether a jurisdictional bar precludes further jurisdiction. *Okoro v. INS,* 125 F.3d 920, 925 (5th Cir.1997). *Okoro* involved a petition for review by an alien facing deportation under INA § 241(a)(2)(A)(ii),[159] which provided for the deportation of any alien with two or more convictions of crimes involving moral turpitude.[160] As a "threshold matter," the *Okoro* court examined its own jurisdiction in light of INA § 106(a)(10), as amended by IIRIRA, which precluded judicial review of any final deportation order "against an alien who is deportable by reason of having committed ... any offense covered by [INA] section 241(a)(2)(A)(ii)[161] for which both predicate offenses are

solicitation to possess cocaine was a deportable offense under INA § 241(a)(2)(B)(i) as an offense "relating to a controlled substance." 123 F.3d at 1324. In both of its opinions in *Coronado-Durazo,* the Ninth Circuit began with the premise that if the alien's conviction constituted a deportable offense, the court "lack[s] jurisdiction to review the final order of deportation issued by the INS" because of INA § 106(a)(10) as amended by the AEDPA. 108 F.3d at 211, 123 F.3d at 1323. Without discussing the issue, in both opinions, the Ninth Circuit proceeded on the premise that, under the terms of INA § 106(10), it could review whether the offense upon which deportation was based was a deportable offense. 108 F.3d at 211, 123 F.3d at 1323. *See also Mendez-Morales v. INS,* 119 F.3d 738, 739 (8th Cir.1997) (finding that the petitioner was deportable for conviction of an aggravated felony and therefore jurisdiction was barred); *Perez v. INS,* 116 F.3d 405, 408 (9th Cir.1997) (reversing agency's findings that the petitioner's crime made him deportable and rendered judicial review unavailable).

[159]8 U.S.C. § 1251(a)(2)(A)(i) (Supp.1996).

[160]125 F.3d at 922-23.

[161]8 U.S.C. § 1251(a)(2)(A)(ii) (Supp.1996).

covered by [INA] section 241(a)(2)(A)(i)[162]."[163] Thus, the court held that its jurisdiction depended on whether the alien was deportable based on convictions covered by INA § 241(a)(2)(A)(i) & (ii), as follows:

> To determine whether this jurisdictional bar applies to [the alien's] petition for review, we must examine whether the underlying offenses relied on by the INS to deport [the alien] are (1) crimes involving moral turpitude, (2) not arising out of a single scheme of criminal misconduct, and (3) for which [the alien] was sentenced to one year or more of imprisonment, regardless of actual confinement.

*Id.* at 925 (citing *Yang,* 109 F.3d at 1192). After determining that all three of these elements applied to the alien, the court concluded that it lacked jurisdiction over the alien's petition for review.[164]

In this same vein, this Court's decision in *Boston-Bollers* also exercised jurisdiction both over the legal issue of whether AEDPA § 440(a)(10)'s enactment of INA § 106(a)(10) applied retroactively and over whether that retroactive application violated Mr. Boston-Bollers' constitutional rights. This Court in *Boston-Bollers* was not required to determine the three threshold issues that the courts did in *Yang* or *Anwar,* because the permanent resident alien facing deportation in *Boston-Bollers conceded his alien status, criminal conviction, and deportability.*[165] The parties did not dispute that the alien's petition for direct review fell within the expressed jurisdiction-limiting language of INA § 106(a)(10). Nevertheless, in *Boston-Bollers* this Court

---

[162]This section is the same jurisdictional bar interpreted by the court in *Yang. Compare Okoro,* 125 F.3d at 925 *with Yang,* 109 F.3d at 1188. For a discussion of the amendments to INA § 106(a)(10) by both the AEDPA and IIRIRA and the successor to INA § 106(a)(10) now found in INA § 242(a)(2), *see* footnote 83 *supra.*

[163]125 F.3d at 923.

[164]125 F.3d at 927.

[165]*Boston-Bollers,* 106 F.3d at 353.

exercised jurisdiction over the alien's petition for direct review in the court of appeals attacking the constitutionality of the judicial review restrictions in INA § 106(a)(10).

Before we conclude our discussion of the *Yang* decision, we note that the Tenth Circuit in *Berehe v. INS,* 114 F.3d 159, 161 (10th Cir.1997), declined to follow the *Yang* approach. In *Berehe,* the court applied IIRIRA § 309(c)(4)(G), which is a transitional rule restricting the judicial review of the deportation of certain criminal aliens, as follows:

> [T]here shall be no appeal permitted in the case of an alien who is inadmissible or deportable by reason of having committed a criminal offense covered in section 212(a)(2) or section 241(a)(2)(A)(iii), (B), (C), or (D) of the Immigration and Nationality Act ... or any offense covered by section 241(a)(2)(A)(ii) of such Act ... for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 241(a)(2)(A)(i) of such Act....

IIRIRA § 309(c)(4)(G).[166] Rejecting the *Yang* approach, the court concluded that this language did not "permit the court to review the merits of whether an alien is validly deportable by reason of having committed one of the enumerated criminal offenses." *Berehe,* 114 at 161. In reaching this conclusion the court specifically reasoned that:

---

[166]According to the court in *Berehe,* the transitional rule found in IIRIRA § 309(c)(4)(G) applied when deportation proceedings were commenced before IIRIRA's general effective date of April 1, 1997 but the final order of deportation or exclusion was entered more than thirty days after IIRIRA's September 30, 1996 date of enactment. 114 F.3d at 161. Because the proceedings to deport the alien in *Berehe* commenced before April 1, 1997 and the order of deportation was issued after October 30, 1996, the court concluded that the transitional rule governed the judicial review of the alien's deportation order. *Id.*

IIRIRA § 309(c)(4)(G) is similar to both INA § 106(a)(10) as amended by IIRIRA and new INA § 242(a)(2)(C). *See* footnotes 74 and 83 *supra* and 170 *infra.* Since 1996, the following four distinct statutes have restricted the judicial review of orders deporting, excluding or removing certain criminal aliens from the United States: (1) INA § 106(a)(10) as enacted by the AEDPA § 440(d), (2) INA § 106(a)(10) as first amended by IIRIRA § 309(d), (3) INA § 242(a)(2)(C) as enacted by IIRIRA § 306(a)(2), and (4) the transitional rule in IIRIRA § 309(c)(4)(G) which was applied in *Berehe. See* footnote 83 *supra* for a discussion of the amendments to INA § 106(a)(10).

> To permit judicial review into the validity of the INS's determination that an alien is deportable by reason of having committed one of the listed crimes, in the guise of making a determination as to the court's jurisdiction, is to permit review of the very fact or condition that the statute appears on its face to be precluding from review. We conclude that such review is contrary to Congress's intent to expedite deportation of criminal aliens.

*Id.* at 162.

However, we observe two additional points about the Tenth Circuit's holding in *Berehe.* First, although professing to follow *Berehe,* the Tenth Circuit in a subsequent case reviewed constitutional and statutory claims raised by an alien who had been found deportable for a reason enumerated in INA § 106(a)(10) before the court dismissed the case for lack of jurisdiction. *Wittgenstein v. INS,* 124 F.3d 1244, 1245 (10th Cir.1997). Second, in *Berehe,* the Tenth Circuit did not discuss IIRIRA's elimination of § 2241 habeas jurisdiction to review immigration matters, the fact that jurisdiction to review immigration matters remains under only the INA, and the consequent effect of criminal aliens being deprived of all judicial review under the INA. The Seventh Circuit in *Yang* recognized these aspects of the problem and analyzed in considerable detail the potential constitutional issues arising from the limitations placed on its jurisdiction. Accordingly, in addition to being persuaded by the Seventh Circuit's construction of INA § 106(a)(10), we are convinced that the court in *Yang* reached its conclusion after giving appropriate consideration to the issues arising from such severe restrictions on judicial review.

J. INA §§ 242(b)(9) and (d) Require Final Removal Order

Before outlining our conclusions, we discuss another important IIRIRA mandate that our sister circuits, in our view, have not given sufficient weight. Prior to IIRIRA, judicial review of the INS' deportation decisions was unavailable before the entry of a final deportation order. That result

was implicit in former INA § 106(a)[167] which provided that review in the courts of appeal was the "sole and exclusive procedure" for challenging a final deportation order, and which required exhaustion of administrative remedies as a prerequisite to obtaining judicial review.[168] IIRIRA strengthened these pre-existing limitations on judicial review. In addition to retaining a mandatory exhaustion provision, IIRIRA added INA § 242(b)(9) which now expressly provides that judicial review is available of only "a final order."[169]

Congress has chosen to delay federal court review of all claims of aliens against whom removal proceedings have been instituted until the conclusion of the administrative proceedings. Neither the district court nor this Court can override that decision. *See, e.g., McCarthy v. Madigan,* 503 U.S. 140, 144, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992) (stating "where Congress specifically mandates, exhaustion is required"); *Alexander v. Hawk,* 159 F.3d 1321 (11th Cir.1998). This exhaustion requirement is statutorily mandated by the INA and not judicially created. Although judicially developed exhaustion requirements might be waived for discretionary reasons by courts, statutorily created exhaustion requirements bind the parties and the courts. When a statute requires

---

[167]8 U.S.C. § 1105a (1994).

[168]*See Massieu v. Reno,* 91 F.3d 416, 421 (3d Cir.1996); *see also INS v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983).

[169]8 U.S.C. § 1252(b)(9). The judges dissenting to the denial of rehearing en banc in the Ninth Circuit's decision of *American-Arab Anti-Discrimination Committee v. Reno* concluded that IIRIRA unambiguously foreclosed all judicial review of the non-criminal alien's claims until the entry of a final deportation order, and that the INA § 242(g) so construed creates no genuine constitutional difficulty. *American-Arab Anti-Discrimination Committee v. Reno,* 132 F.3d 531 (9th Cir.1997) (allowing aliens post-IIRIRA to seek an injunction in district court before a final removal order), *cert. granted,* --- U.S. ----, 118 S.Ct. 2059, 141 L.Ed.2d 137 (June 1, 1998) (granting certiorari on "[w]hether, in light of the Illegal Immigration Reform and Immigrant Responsibility Act, the courts below had jurisdiction to entertain respondents' challenge to the deportation proceedings prior to the entry of a final order of deportation").

exhaustion, a petitioner's failure to do so deprives this court of jurisdiction. Importantly, mandatory statutory exhaustion is not satisfied by a judicial conclusion that the requirement need not apply due to futility. *Weinberger v. Salfi,* 422 U.S. 749, 766, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975) (holding that where exhaustion is a statutorily specified jurisdictional prerequisite, "the requirement ... may not be dispensed with merely by a judicial conclusion of futility").[170]

IIRIRA's mandate is consistent with the long-established administrative law principle that courts should not intervene in an ongoing administrative agency process to reach potential constitutional issues.[171] Deferring Richardson's claims until the entry of a final order of deportation does not raise substantial constitutional concerns. Congress has broad latitude to regulate the mode and timing of judicial review of administrative agency decisions, even where constitutional claims are involved. It is a familiar feature of administrative law that a litigant may be required to obtain a final agency decision on all claims before being able to seek judicial review.[172]

---

[170]In *McCarthy,* the Supreme Court noted that where Congress specifically mandates, a plaintiff must exhaust the administrative remedies available to him before he may file in federal court, but held that there was no specific mandate in the pre-PLRA section 1997e(a) context. 503 U.S. at 144, 112 S.Ct. 1081.

[171]*See, e.g., FTC v. Standard Oil Co. of Cal.,* 449 U.S. 232, 239-45, 101 S.Ct. 488, 66 L.Ed.2d 416 (1980) (holding agency's issuance of an administrative complaint was not subject to review until final agency action despite its evident assumption that the propriety of the initial charging decision would not be subject to administrative review); *United States v. Hollywood Motor Car Co.,* 458 U.S. 263, 268-70, 102 S.Ct. 3081, 73 L.Ed.2d 754 (1982) (holding that criminal defendants could not immediately appeal the denial of motion to dismiss indictment based on prosecutorial vindictiveness); *Massieu v. Reno,* 91 F.3d 416, 424-26 (3d Cir.1996) (holding "[a]lthough the immigration judge is not authorized to consider the constitutionality of the statute, this court can hear that challenge upon completion of the administrative proceedings" and dismissing alien's complaint alleging irreparable selective enforcement in retaliation for an exercise of First Amendment rights).

[172]*See Weinberger v. Salfi,* 422 U.S. 749, 757, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975).

This final-decision requirement avoids enmeshing courts in constitutional litigation about the scope of judicial review left under INA that might prove to be unnecessary. For example, Richardson raises numerous statutory issues before the BIA about INA § 101(a)(13)(C) and the *Fleuti* doctrine that, if decided in his favor, would remove certain constitutional issues. This requirement also avoids piecemeal review by consolidating all challenges to the deportation process into a single judicial proceeding. Richardson's contentions that the INA, especially INA § 242(a)(2)(B), unconstitutionally restricts his judicial review can be made in his direct petition for review in the court of appeals, just as the alien did in *Boston-Bollers*. Richardson does not need § 2241 habeas to do that.[173]

K. Alternative Review Under INA Satisfies Suspension Clause

We are not required to resolve the circuits' ongoing debate about whether judicial review under the Suspension Clause approximates § 2241 habeas jurisdiction. This is so because the

---

[173]Although the immigration judge is not authorized to consider the constitutionality of INA § 242(a)(2)(C), the court of appeals can hear such a challenge upon completion of the administrative proceedings. *See INS v. Chadha,* 462 U.S. 919, 938, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983). *Ramallo v. Reno,* 114 F.3d 1210 (D.C.Cir.1997). *See* footnote 178 *infra*.

Contrary to Richardson's arguments, the potential for an incomplete record on appeal regarding alleged constitutional violations does not preclude any such violations from being presented during review in the court of appeals. Pursuant to 28 U.S.C. § 2347(b)(3) (Supp.1998), an appellate court can transfer a case to district court in order to develop a more complete factual record if deemed necessary. Accordingly, in the absence of a factual record of an alleged constitutional violation due to an immigration judge's inability to rule on such matters, the court of appeals can upon proffer transfer the case to the district court. *See e.g. Coriolan v. INS,* 559 F.2d 993, 1003 (5th Cir.1977) (Tuttle, J.) (applying the procedures in § 2347 in the immigration context). In Richardson's particular case, we note that the facts in his case are basically undisputed and that his constitutional claims raise primarily legal questions, such as the scope of judicial review required by the Suspension Clause, that are not fact intensive or necessarily in need of record development.

Supreme Court has held that the Suspension Clause permits Congress to replace habeas corpus with another avenue of judicial review as long as that alternative vehicle is adequate and effective. *Swain v. Pressley,* 430 U.S. 372, 383-84, 97 S.Ct. 1224, 51 L.Ed.2d 411 (1977); *see also Lonchar v. Thomas,* 517 U.S. 314, 322-33, 116 S.Ct. 1293, 1298, 134 L.Ed.2d 440 (1996). Congress had done just that in enacting IIRIRA. We find that the repeal of § 2241 habeas does not violate the Suspension Clause because the INA, as amended by IIRIRA, still provides adequate and effective judicial review.

In most immigration cases, non-criminal aliens, and even certain criminal aliens, facing removal orders can seek adequate and effective judicial review under the INA by a petition for direct review in the court of appeals after a final removal order. INA §§ 242(b)(2), 242(b)(9), & 242(d)(1).[174] INA § 242(b)(9) expressly provides that this judicial review covers "all questions of law and fact, including interpretation and application of constitutional and statutory provisions."[175]

A complication arises for Richardson only because the INA, *within the confines of the INA,* places additional restrictions on the INA-proscribed judicial review for criminal aliens with certain enumerated serious criminal offenses. Richardson asserts that INA § 242(a)(2)(C) precludes all judicial review of removal orders against criminal aliens, and thus INA § 242(g)'s repeal of § 2241 habeas unconstitutionally removes his only remaining vehicle for judicial review. Alternatively, Richardson argues that the INS' proposition—that INA § 242(a)(2)(C) still permits review of "substantial constitutional claims"—does not satisfy the Suspension Clause's requirement of

---

[174]8 U.S.C. §§ 1252(b)(2), 1252(b)(9), & 1252(d)(1) (Supp.1998).

[175]8 U.S.C. § 1252(b)(9) (Supp.1998).

adequate and effective review which, Richardson says, means judicial review of all constitutional and statutory errors.

For several reasons, we reject Richardson's contention that he will not have adequate and effective review under the INA. First, Congress clearly has the power to repeal § 2241 habeas jurisdiction over immigration decisions in the inferior courts and to provide for judicial review of immigration decisions exclusively under a different jurisdictional statute, to wit: the INA. Congress has the power to remove all immigration decisions from the jurisdiction of the district courts, which is exactly what Congress has done. Second, in enacting the INA, Congress has the power to outline the mode and timing of judicial review under the INA, to wit: only by direct petition for review in the court of appeals and only after a final removal order.

Third, Congress has the power to mandate detention and removal of aliens with serious criminal convictions and to expedite their removal by limiting judicial review over their detention and removal to the fullest extent allowed under the Constitution. This is why Congress enacted, within the INA's judicial-review scheme, the additional restriction on judicial review found in INA § 242(a)(2)(C).[176]

---

[176]INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C) (Supp.1998) (emphasis supplied), provides:

> Notwithstanding any other provision of law, no court shall have jurisdiction to review any final order of removal *against an alien who is removable by reason of having committed a criminal offense covered in section 212(a)(2)* [covers certain controlled substance offenses] or 237(a)(2)(A)(iii), (B), (C), or (D), or any offense covered by section 237(a)(2)(A)(ii) for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 237(a)(2)(A)(i).

*Id.* INA § 237 is codified in 8 U.S.C. § 1227 (Supp.1998). INA § 212 is codified in 8 U.S.C. § 1182 (Supp.1998).

While INA § 242(a)(2)(C) significantly restricts Richardson's judicial review, we disagree with Richardson's contention that this INA provision leaves him without any judicial review in violation of the Suspension Clause. Courts of appeal retain jurisdiction under INA § 242(a)(2)(C) to determine whether the jurisdictional bar in that section applies. *See Yang,* 109 F.3d at 1192; *Okoro v. INS,* 125 F.3d at 925; *Anwar,* 116 F.3d at 144; *Coronado-Durazo,* 123 F.3d at 1323. *But cf., Berehe v. INS,* 114 F.3d at 161. INA § 242(a)(2)(C) does not state that judicial review is prohibited if the Attorney General finds that the person being removed is an alien and removable for a reason covered in INA § 242(a)(2)(C). To the contrary, jurisdiction is prohibited if such conditions actually exist. Under the language of INA § 242(a)(2)(C), in order to decide whether the jurisdictional bar applies, courts must determine that the removal order: (1) "is against an alien" (2) "who is removable" (3) "by reason of having committed a criminal offense covered" in certain enumerated sections.[177]

In addition to these three jurisdictional facts, a court of appeal retains jurisdiction to entertain a constitutional attack on this INA statute as part of an alien's petition for review of a final order under the INA.[178] If judicial review of a constitutional attack on a jurisdiction-stripping statute

---

[177]*See* full text of INA § 242(a)(2)(C), 8 U.S.C. § 1252(a)(2)(C), at footnote 176 *supra.*

[178]*See Morel v. INS,* 144 F.3d 248 (3d Cir.1998); *Mansour v. INS,* 123 F.3d 423, 426 (6th Cir.1997); *Boston-Bollers v. INS,* 106 F.3d 352 (11th Cir.1997); *Okoro v. INS,* 125 F.3d 920, 923 (5th Cir.1997); *Fernandez v. INS,* 113 F.3d 1151, 1154 (10th Cir.1997) (noting the government conceded judicial review was available for "substantial" constitutional errors); *Yang v. INS,* 109 F.3d 1185 (7th Cir.), *cert. denied sub nom, Katsoulis v. INS,* --- U.S. ----, 118 S.Ct. 624, 139 L.Ed.2d 605 (1997); *Yeung v. INS,* 76 F.3d 337 (11th Cir.1995); *Massieu v. Reno,* 91 F.3d 416, 420-24 (3d Cir.1996) (district court lacked jurisdiction to entertain constitutional challenge to deportation order, which court of appeals had exclusive jurisdiction to entertain); *Perez-Oropeza v. INS,* 56 F.3d 43, 45-46 (9th Cir.1995); *Raya-Ledesma v. INS,* 42 F.3d 1263, 1265 (9th Cir.), *modified* by 55 F.3d 418 (9th Cir.1994). *But compare Chow v. INS,* 113 F.3d 659, 667 (7th Cir.1997) (deciding jurisdictional bar itself, in INA § 106(a)(10) enacted by

72

in this court of appeals was not foreclosed by INA § 106(a)(10), *Boston-Bollers,* 106 F.3d at 352, it is not foreclosed by INA § 242(a)(2)(C). This approach is consistent with the admonition in *Heikkila v. Barber,* 345 U.S. 229, 234, 73 S.Ct. 603, 97 L.Ed. 972 (1953), that "Congress ... intended to make these administrative decisions non-reviewable to the fullest extent possible under the Constitution."

Thus, we find that the INA still assures Richardson a significant degree of judicial review in the court of appeals after a final removal order, despite INA § 242(a)(2)(C). While that review is definitely restricted, INA § 242(a)(2)(C) does not remove *all* judicial review. Any constitutional infirmities Richardson perceives in that INA-proscribed judicial review must be raised in an attack on the constitutionality of INA § 242(a)(2)(C) only in the court of appeals and only after a final removal order.[179] If review of such questions under INA § 242(a)(2)(C) does not satisfy the

AEDPA § 440(a), did not violate Article III or Due Process Clause but declining to find sufficient jurisdiction under that jurisdictional bar to consider the alien's other constitutional claims that procedures in the BIA proceedings violated his constitutional rights because Chow still had other potential avenues for relief remaining open for those constitutional claims such as a writ pursuant to 28 U.S.C. § 2241 or 28 U.S.C. § 1651 or Art. I, § 9 cl.2); *Turkhan v. INS,* 123 F.3d 487, 489 (7th Cir.1997) (following *Chow,* and noting other avenues of habeas review were still available and therefore INA § 106(a)(10) is unlike other "true door-closing statutes—[where] the constitutional claims ... would be reviewed either pursuant to the statutes at issue or not at all"). *Lerma de Garcia v. INS,* 141 F.3d 215, 217 (5th Cir.1998) (holding INA § 106(a)(10) forecloses all judicial review including constitutional claims in the context raised as "criminal deportees retain some opportunity to apply for writs of habeas corpus"). *Williams v. INS,* 114 F.3d 82, 83-84 (5th Cir.1997); *Nguyen v. INS,* 117 F.3d 206, 207 (5th Cir.1997). The courts strictly foreclosing all review under INA § 106(a)(10) did so in large part because § 2241 habeas jurisdiction remained available. That is no longer the case.

[179]In addition to his claim that INA § 242(a)(2)(C) conflicts with the Suspension Clause, we recognize that Richardson also alleges that he has been denied equal protection guaranteed under the Due Process Clause of the Fifth Amendment. An alien facing removal from the United States as inadmissible can request review of bond/release decisions only from the INS district director, but an alien being removed based on deportability can seek review from an immigration judge. Richardson contends that this disparate treatment constitutes a violation of equal

Suspension Clause and INA § 242(a)(2)(C) is held to be unconstitutional, then at worst Richardson

will be left with the INA's underlying general judicial review of "all questions of law and fact"

available under INA §§ 242(b)(2) and 242(b)(9) in the court of appeals. Such judicial review clearly

satisfies the Suspension Clause.

---

protection.

As a permanent resident alien, Richardson enjoys equal-protection rights. *Yick Wo v. Hopkins,* 118 U.S. 356, 369, 6 S.Ct. 1064, 30 L.Ed. 220 (1886). Classifications in the immigration context are subject to the rational-basis standard under which a classification is valid if rationally related to a legitimate government purpose. *Yeung v. INS,* 76 F.3d 337, 339 (11th Cir.1995) (addressing waivers under former INA § 212(h)). An arguable fatal defect in Richardson's equal-protection argument is that most resident aliens returning to the United States can re-enter summarily. Thus, it is returning aliens with serious criminal convictions, not all returning aliens, that are deemed "seeking admission," detained, and restricted to seeking bond from the INS district director. The INS has a valid interest in using ports of entry as a screening mechanism for removing criminal aliens expeditiously and restricting bond decisions to review by the district director, as opposed to admitting them and then instituting deportation proceedings. The Supreme Court has recognized that although a permanent resident alien who is returning from a brief trip abroad enjoys rights to procedural due process, such aliens do not have a right to "identical treatment" to a permanent resident alien who has not left the country. *Landon v. Plasencia,* 459 U.S. 21, 31, 103 S.Ct. 321, 74 L.Ed.2d 21 (1982).

Although we briefly comment on the merits of Richardson's equal-protection claim, this claim is precisely the type of claim that Richardson must raise on a petition for review after a final removal order has been issued. Thus, we do not resolve the equal-protection issue or whether review of this type of constitutional claim is permitted under INA § 242(a)(2)(C), or, if not, whether INA § 242(a)(2)(C) violates the Suspension Clause.

74

IIRIRA expressly provides for the severability of its numerous provisions.[180] Therefore, even if a court of appeals were to find INA § 242(a)(2)(C) does not satisfy the Suspension Clause, this does not mean that INA § 242(g)'s repeal of § 2241 habeas is unconstitutional. What it means is that without INA § 242(a)(2)(C)'s specific additional limitations on judicial review under the INA, Richardson then could avail himself of the general judicial review provided under INA §§ 242(b)(2) and 242(b)(9). Thus, Richardson's concerns at most boil down to whether INA § 242(a)(2)(C) is unconstitutional, and not whether INA § 242(g)'s repeal of § 2241 is constitutional. IIRIRA mandates that constitutional claims about the INA's provisions be made in only one place and one time: in the court of appeals and after a final removal order.[181]

We pause to observe that Richardson's removal order is based on his having a cocaine-trafficking conviction, which is deemed an aggravated felony conviction under the INA and is a basis for both inadmissibility and deportation under the INA. We also note that Richardson does not dispute that he is an alien. Making sure that the BIA record establishes the jurisdictional facts

---

[180]IIRIRA Title VI subtitle E specifically provides for severability:

> SEVERABILITY.—If any provision of this division or the application of such provision to any person or circumstances is held to be unconstitutional, the remainder of this division and the application of the provisions of this division to any person or circumstance shall not be affected thereby.

[181]This applies not only to Richardson's claims about INA § 242(a)(2)(C) but also to Richardson's constitutional claims regarding the effect of INA § 236(e) (restricted judicial review of bond and parole decisions) and INA § 242(a)(2)(B)(ii) (restricted judicial review of discretionary decisions). Similar to footnotes 179 and 182, we do not address whether INA § 242(a)(2)(C) permits, or whether the Suspension Clause requires, the judicial review of all constitutional claims or only "substantial constitutional claims" as the INS contends. We do know, however, from *Boston-Bollers* and *Yang* that, at a minimum, judicial review exists under INA § 242(a)(2)(C) to determine whether that jurisdictional bar applies and whether that jurisdictional bar violates the Suspension Clause.

under INA § 242(a)(2)(C)—that the criminal alien: (1) is "an alien," not a citizen; (2) "who is removable"; (3) "by reason of having committed a criminal offense covered" in certain enumerated sections—goes a long way, and very well may be sufficient in this particular type case, to provide an adequate and effective collateral judicial review of the validity of Richardson's executive detention and removal order. This is so at least where the sole basis of an alien's being detained and removed is one fact: his having committed an aggravated felony conviction as defined by the

INA.[182] This is especially true since discretionary relief from, and cancellation of, that type of

_____

[182]Judicial review of statutory and legal errors is expressly provided for under INA §§ 242(b)(2) and 242(b)(9). In this case, we do not address whether INA § 242(a)(2)(C) permits, or whether the Suspension Clause requires, the judicial review of statutory or legal errors other than to the extent necessary to determine whether a jurisdictional bar to judicial review exists. Several courts have addressed this issue and reached different conclusions.

The Second Circuit reasoned, albeit in dicta, that the nature of the Suspension Clause suggests that it preserves a writ which encompasses statutory claims. In *Henderson,* the Second Circuit observed that "before the Constitution was enacted, the writ could only have been granted based on errors of law, since there was no such thing as a constitutional error." 157 F.3d at 121 n. 13. The court also noted that, especially since the Bill of Rights was not adopted until 1791, it would not "have made much sense for the framers to have intended the writ ... to be available just for the enforcement of rights protected by the new Constitution." *Id.* Thus, according to the Second Circuit "the Constitution itself inevitably seems to mandate habeas corpus review of some statutory questions." *Id.* Perhaps as further support for this interpretation, statutory errors in executive detention historically have been reviewed under § 2241 and its precursor statutes. *See, e.g., Felker,* 518 U.S. at 661, 116 S.Ct. 2333; *Delgadillo v. Carmichael,* 332 U.S. 388, 390-91, 68 S.Ct. 10, 92 L.Ed. 17 (1947); *Bridges v. Wilson,* 326 U.S. 135, 149, 65 S.Ct. 1443, 89 L.Ed. 2103 (1945); *Kessler v. Strecker,* 307 U.S. 22, 35, 59 S.Ct. 694, 83 L.Ed. 1082 (1939); *Mahler v. Eby,* 264 U.S. 32, 46, 44 S.Ct. 283, 68 L.Ed. 549 (1924); *Gegiow v. Uhl,* 239 U.S. 3, 36 S.Ct. 2, 60 L.Ed. 114 (1915); *Gonzales v. Williams,* 192 U.S. 1, 24 S.Ct. 177, 48 L.Ed. 317 (1904); *The Japanese Immigrant Case,* 189 U.S. 86, 23 S.Ct. 611, 47 L.Ed. 721 (1903); *Ekiu v. United States,* 142 U.S. 651, 12 S.Ct. 336, 35 L.Ed. 1146 (1892). The precursor statute to § 2241 did not specifically mention that constitutional claims could support the issuance of a writ of habeas corpus until 1867. *See Felker,* 518 U.S. at 659-60, 116 S.Ct. 2333.

Conversely, other courts have concluded that the judicial review under § 2241 is significantly broader than the judicial review available in the writ protected by the Suspension Clause. The Seventh Circuit noted that "28 U.S.C. § 2241 offers an opportunity for collateral attack more expansive than the Great Writ preserved in the Constitution." *Yang v. INS,* 109 F.3d at 1195. In this same vein, the Seventh Circuit also noted that "[t]here is a vast gulf between the non-suspendable constitutional writ and the Administrative Procedures Act." *Id.; see also Felker,* 518 U.S. at 663, 116 S.Ct. 2333 ("The class of judicial actions reviewable by the writ [as known to the Framers] was more restricted as well.").

We recognize that Richardson asserts other legal or statutory errors, such as the *Fleuti* issue, but no court should decide whether jurisdiction exists either under or despite INA § 242(a)(2)(C) to address those errors until after a final removal order. This is what

removal is no longer allowed under the INA.[183]

In summary, Congress through IIRIRA indisputably intended to remove all jurisdiction in the district courts and to abbreviate the judicial review of removal orders against criminal aliens to the fullest extent allowed by the Constitution. Preserving judicial review in the court of appeals under the INA, to the extent necessary to pass constitutional muster, more closely approximates congressional intent than the anomalous situation of disregarding the plain language of INA § 242(g) and preserving a layer of additional judicial review in the district courts for criminal aliens for whom Congress intended to expedite removal by restricting judicial review to the extent it could.[184]

## V. CONCLUSION

After careful consideration, we conclude that INA § 242(g) repeals § 2241 habeas jurisdiction over immigration decisions. Even if this repeal leaves Richardson with no judicial review of his detention or removal, the repeal of § 2241 does not violate the Due Process Clause or Article III. The Due Process Clause is not violated because Richardson's constitutional rights as a permanent resident alien are fully met by the INA's extensive procedures for bond decisions, parole

---

IIRIRA mandates. We need not enter this debate about what the Suspension Clause requires and whether INA § 242(a)(2)(C)'s limitations on judicial review violate the Suspension Clause; even if that section were held unconstitutional, Richardson still has adequate and effective review under INA §§ 242(b)(2) and 242(b)(9).

[183]*See* footnotes 11 and 27 *supra.*

[184]Whether Richardson may seek a writ pursuant to the All Writs Act, 28 U.S.C. § 1651, or an Art. I § 9, cl.2 writ in the Supreme Court is an issue we need not address as Richardson sought only § 2241 habeas jurisdiction. Because we find, to the extent required by the Constitution, Richardson's claims can be sufficiently reviewed under INA §§ 242(b)(2), 242(b)(9), and 242(a)(2)(C), we also do not address the INS' alternative contention that INA § 242(g)'s repeal of § 2241 habeas does not violate the Suspension Clause because some form of "residual" habeas exists under a constitutional writ, unaided by statute, to address "fundamental miscarriage of justice" and that Richardson's constitutional and legal claims do not rise to a "fundamental miscarriage of justice."

decisions, and removal proceedings. Article III is not violated because Article III does not mandate the judicial review of immigration matters but instead leaves establishing the jurisdiction of the inferior federal courts to Congress.

This repeal also does not violate the Suspension Clause. INA § 242(a)(2)(C) does not remove all judicial review. At a minimum, judicial review remains available to Richardson under INA § 242(a)(2)(C) to determine if the specific conditions exist that would bar jurisdiction. If the bar applies, jurisdiction remains to consider whether the level of judicial review remaining in INA § 242(a)(2)(C) in a particular case satisfies the Suspension Clause. If not, Richardson can pursue adequate and effective judicial review of statutory and constitutional issues under INA §§ 242(b)(2) and 242(b)(9). However, IIRIRA mandates the mode and timing of any constitutional attack on INA § 242(a)(2)(C) or any other INA provisions: only in the court of appeals, only after a final removal order has been issued, and only after Richardson has exhausted all administrative remedies.

In enacting IIRIRA, Congress has mandated the detention and expedited the removal of aliens, including long-term permanent resident aliens, who commit serious criminal offenses while in the United States. Richardson correctly points out many harsh consequences created by these new immigration laws, but those consequences are not the result of constitutional violations but are the result of political decisions made by Congress exercising its plenary power to regulate immigration.[185] As outlined in this decision, the Supreme Court has recognized repeatedly that

---

[185]*See, e.g.,* S.Rep. No. 104-48 at 2-6 (1995) (discussing the presence of at least "450,000 criminal aliens in the United States who are currently incarcerated or under some form of criminal justice supervision," the fact that "the Federal Bureau of Prisons confines about 22,000 criminal aliens—25 percent of the total Federal prison population," the "confinement of criminal aliens in state and federal prisons costs ... approximately $724,000,000 in 1990," that the "INS is overwhelmed by the criminal alien problem," and that "criminal aliens are ... a growing drain on scarce criminal justice resources.").

immigration decisions present peculiarly political issues to be decided by the executive and legislative branches. Our judicial task is not to rewrite these new immigration laws, but to apply these laws as written by Congress to the full extent permitted by the Constitution. We have done so.

Accordingly, we REVERSE the decision of the district court, VACATE the stay entered by this Court on February 23, 1998, and direct the district court to dismiss Richardson's petition for lack of subject matter jurisdiction.

REVERSED AND VACATED.